CITY OF ROCHESTER, Respondent, v ANGELO CHIARELLA et al., Individually and on Behalf of All Payers of Real Property Taxes to the City of Rochester for the Fiscal Years 1974-1975 through 1977-1978, Defendants, and STEPHEN J. SERCU et al., Appellants.

ROCHESTER GAS AND ELECTRIC CORPORATION, Appellant, v CITY OF ROCHESTER, Respondent.

ROCHESTER TELEPHONE CORPORATION, Appellant, v CITY OF ROCHESTER, Respondent. (Appeal No. 1.)

CITY OF ROCHESTER, Appellant, v ANGELO CHIARELLA et al., Individually and on Behalf of All Payers of Real Property Taxes to the City of Rochester for the Fiscal Years 1974-1975 through 1977-1978, Respondents, and STEPHEN J. SERCU et al., Appellants. (Appeal No. 2.)

Fourth Department, April 12, 1982

APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel,* for City of Rochester, respondent.

*Nixon, Hargrave, Devans & Doyle* (*Michael Tomaino* of counsel), for Rochester Gas and Electric Corp. and Rochester Telephone Corp., appellants.

*Harter, Secrest & Emery* (*Kenneth Payment* of counsel), for general class, respondents.

*David J. Angelone* for Stephen J. Sercu and another, appellants.

*Johnson, Mullan, Brundage & Keigher, P. C.* (*Byron Johnson* of counsel), for subclass B representatives, *amicus curiae.*

DOERR, J.

In *Angelone v City of Rochester* (72 AD2d 445, affd 52 NY2d 982), we held that Ordinance No. 79-307 which was adopted by the City of Rochester in order to establish a special capital fund to pay the tax refunds which were mandated by *Waldert v City of Rochester* (44 NY2d 831, modfg 61 AD2d 147) was unconstitutional. A direct refund of excess property taxes collected for the fiscal years 1974-1978 was ordered.

Anticipating the litigation that was sure to follow our decision, the City of Rochester commenced this class action on June 26, 1980 against certain named individuals as representatives of all payers of real property taxes to the city for the fiscal years 1974-1979. The city sought declaratory relief establishing the rights and liabilities of all the parties in the class action and requested the court to direct a method of payment to those entitled to a refund according to a plan to be proposed by the city. Numerous actions for tax refunds had already been commenced by taxpayers when the instant class action was commenced and literally hundreds more were commenced thereafter.

Two orders issued by the Justice specially assigned to this case are the subject of this appeal. In the first order entered October 9, 1981 (certification order), Special Term: (1) permanently certified the action as a class action; (2) appointed a representative of the general class which was described as including all persons or entities who paid real property taxes to the city at any time from 1974 to 1978; (3) established four subclasses within the general class; (4) appointed the Harter, Secrest and Emery law firm to represent the general class and appointed various Rochester law firms to represent the four subclasses; (5) dismissed approximately 311 individual actions because they were filed after the court took jurisdiction over the general class; and (6) consolidated all actions which were commenced prior to the class action. This order also directed that prior to resolution of any other issues, the parties were to litigate the threshold issue of whether those taxpayers who paid illegal taxes without written protest were nevertheless entitled to a tax refund.

■ From this order Rochester Gas and Electric and Rochester Telephone Corp. (Utilities) and the representatives of Subclass A appeal. Rochester Gas and Electric and Rochester Telephone Corp. were the only two entities included within Subclass D. Subclass A was defined as representing those taxpayers who paid their taxes under some form of written protest and who challenge the right of nonprotesters to obtain tax refunds in whole or in part. For the reasons which follow, we modify and remit for further proceedings insofar as the October 9, 1981 order is concerned.

■ In the second order appealed entered November 4, 1981, Special Term decided the threshold issue which it framed in the October 9, 1981 order. Special Term determined that nonprotesters, i.e., those taxpayers who paid their tax without protest, are legally entitled to refunds and that formal written protest was unnecessary. From this order both the City of Rochester and representatives of Subclass A appeal. We reverse this order.

First of all, on the issue of protest, the law is clear that a taxpayer is entitled to a refund for the payment of illegal taxes only if he can show that the payment was either made under protest or was otherwise involuntarily made (*Mercury Mach. Importing Corp. v City of New York,* 3 NY2d 418, 424-425). The need for appropriate protest in tax refund cases is well established and has been reiterated time and again by this court and by the Court of Appeals and needs no elaboration here. In *Hurd v Buffalo* (41 AD2d 402, 406, affd 34 NY2d 628), the fountainhead of all recent tax refund litigation, we held that the City of Buffalo "would be liable only for those taxes paid under protest." Similarly, in *Angelone* (72 AD2d 445, 449, *supra*), we stated that "only those taxpayers who paid their taxes 'under protest' are legally entitled to a refund". In *Waldert v City of Rochester* (44 NY2d 831, 835, modfg 61 AD2d 147, app dsmd 439 US 922, *supra*), the Court of Appeals stated that "the plaintiff * * * is entitled to establish its rights to repayment of real property taxes paid in excess of the constitutional limitation if such taxes were paid under appropriate protest."

Formal written protest is not necessary if the taxes were paid under compulsion or duress which has been described as payment made "where *present* liberty of person or *immediate* possession of needful goods is threatened by nonpayment of the money exacted" (*Mercury Mach. Importing Corp. v City of New York,* 3 NY2d 418, 425, *supra* [emphasis added]; see *Adrico Realty Corp. v City of New York,* 250 NY 29, 33-34, 39-40). In our view the tax payments at issue here were not made under duress. There was no immediate threat to the possession or use of the real property except that a lien was routinely created against the property until the tax was paid. If the threat to a taxpayer is not immediate, the subsequent tax payment is considered to be voluntary and therefore not recoverable in a tax refund proceeding absent formal written protest (see *Tripler v Mayor, Aldermen & Commonalty of City of N. Y.,* 125 NY 617, 625-626; *Title Guar. & Trust Co. v City of New York,* 265 App Div 304, 306, affd 290 NY 910; *Goldberg v City of New York,* 260 App Div 61, affd 285 NY 705). The cases relied upon by the general class are distinguishable on their facts since they involved situations where either actual protest had been made, a lawsuit had been commenced, or there was an immediate threat of loss of business or use of property. The fact that there is a lien against the real property until the tax is paid is not the kind of duress which makes the tax payment involuntary and therefore excused from any requirement of formal protest. If it were, there would never be a need for any taxpayer to submit a written protest since virtually all real property taxes create liens upon the subject real property until they are paid.

Therefore, we hold that absent appropriate written protest, taxpayers of the City of Rochester are not entitled as a matter of legal right to a tax refund for the years in question.

Whether the city may nonetheless make these tax refund payments to nonprotesters under the theory that such payments constitute equitable claims under subdivision 5 of section 20 of the General City Law is not now before us since Special Term specifically declined to rule on that issue. Absent such a ruling, this court will not entertain the issue for the first time on appeal (*Omowale v State of*

*New York,* 72 AD2d 955, 956). We therefore remit the matter to Special Term for a determination of the legality of the payment by the city to nonprotesters in the light of pertinent provisions of the Charter of the City of Rochester and whatever existing authorizing legislation there may have been (see, generally, 15 McQuillin, Municipal Corporations [3d ed], § 39.20; 17 McQuillin [3d ed], § 48.01; see, also, 17 McQuillin [3d ed], §§ 48.07, 48.17, 48.18, 49.07). We note that in the event Special Term should determine that such payments cannot be legally made, an order should be entered eliminating "new" Subclass D as hereinafter established.

As to the October 9, 1981 certification order, several points are raised on appeal. First of all, we agree with the Utilities that Special Term erred in dismissing their actions against the city for tax refunds. Special Term ordered dismissal of the Utilities' actions pursuant to CPLR 3211 (subd [a], par 4) on the ground that another action (i.e., the class action) was already pending between the parties. This was error. The Utilities' actions were commenced the same day that the city commenced the class action and therefore the class action cannot be said to have preceded the Utilities' actions (*Avery v Title Guar. & Trust Co.,* 230 App Div 519; *Nacional Financiera v Banco de Ponce,* 85 NYS2d 277, affd 275 App Div 832; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.20). The proper procedure was for the court to join the Utilities' actions with the class action just as it did with several other actions which had already been commenced before the class action.

None of the parties question the propriety of maintaining this action as a class action except for the Utilities who do so only because of their contention that their actions should not have been dismissed. However, the form which the class action should take is another matter. Special Term appointed the Harter, Secrest and Emery law firm to represent the general class of all taxpayers who paid taxes from 1974-1978. A separate Subclass A was established with separate counsel to represent those taxpayers who paid taxes under protest and who object to nonprotesters receiving refunds. There is no subclass that represents only nonprotesters. As matters stand now, there

is an inherent conflict in Harter, Secrest and Emery representing the general class of all taxpayers. If the city had the money to pay all the claimants — protesters and nonprotesters alike — there would be no problem. At the moment, however, that is not the case. According to the city, there is only a limited fund available to pay claims and because of this, the city has recommended compromising the claims and settling the lawsuits for less than full payment. This may well set protester against nonprotester especially in the light of our decision here which determines that only taxpayers who paid under protest are legally entitled to a refund. Harter, Secrest and Emery cannot represent "all" taxpayers when there is such an obvious conflict between at least two groups of those taxpayers. It is clear that a party cannot be an adequate class representative if he has a conflict with various class members. These conflicts are such that Special Term could have determined that the joinder of separate class actions was the best way to proceed. However, there is no fundamental error in proceeding as one class action as long as the general class is divided into various subclasses (Siegel, New York Practice, § 141, p 179). The court in a class action has broad powers to control the course of the litigation (CPLR 907; *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 100). One way to overcome any potential conflict within members of the class is to create subclasses along the lines of the conflicting interests (2 Weinstein-Korn-Miller, NY Civ Prac, par 906.03). Representation of the general class should be eliminated and a new subclass created (Subclass D) consisting only of nonprotesters with the opportunity afforded to them to establish their entitlement to a refund. In addition, Subclass A should be expanded to cover all protesters not merely those who protest and object to nonprotesters receiving refunds. On remittal Special Term should also determine who the representatives of these subclasses should be and who their legal counsel should be. In this form, the general class of all taxpayers will be divided into four subclasses: one that represents only protesters (Subclass A); one that represents taxpayers who sold their property since 1974 (Subclass B); one that represents taxpayers whose assessments have been reduced

since 1974 (Subclass C) and one that would represent only nonprotesters (a new Subclass D).

There is merit to having one representative and one lawyer or law firm oversee and manage the entire litigation on behalf of the defendant class. In its discretion, on remittitur, Special Term may determine that the Harter, Secrest and Emery firm should continue to represent the general class in this fashion but if it does so, it should clearly define its duties and responsibilities.

We have considered the other issues raised as to both orders and find them to be without merit.

DILLON, P. J., HANCOCK, JR., DENMAN and MOULE, JJ., concur.

Appeal No. 1. — Order unanimously modified and as modified affirmed, without costs, and matter remitted to Supreme Court, Monroe County, for further proceedings, in accordance with opinion by DOERR, J.

Appeal No. 2. — Order unanimously reversed, without costs, and matter remitted to Supreme Court, Monroe County, for further proceedings in accordance with same opinion as in City of Rochester v Chiarella, Appeal No. 1, 86 AD2d 110, decided herewith.