OPINION OF THE COURT
Wachtler, J.
Appellant is the representative of a subclass of real property owners in the City of Rochester whose property was assessed for real property taxes in excess of the tax limitations imposed by our State Constitution. Refunds are sought in the amount of the excess taxes paid pursuant to the unconstitutional levy for the tax years 1974-1975 through 1977-1978, although the taxpayers in the subclass had paid taxes for those years without protest. Special Term concluded that, under the circumstances of this case, the taxpayers’ failure to protest payment of the excess taxes should not bar recovery. The Appellate Division reversed, holding that, absent appropriate protest or payment of the taxes under duress, these taxpayers are not entitled to refund of the excess taxes as a matter of legal right. There should be an affirmance.
The background of the present appeal begins with this court’s decision in Hurd v City of Buffalo (34 NY2d 628, affg 41 AD2d 402). At issue in Hurd was a provision of the Local Finance Law which excepted from the 2% constitutional limitation on real property taxation (NY Const, art VIII, § 10) taxes levied for pension and retirement benefits. Although the statute and the tax levied pursuant to it Were held unconstitutional, retrospective relief was withheld, because the municipality had relied upon the statute in preparing its budget. Under the circumstances, “to mandate repayment of amounts illegally collected in the past would place an impossible burden upon [the municipality]” (41 AD2d, at p 406).
*321 In response to the Hurd decision, the Legislature attempted, in successive enactments, to alleviate the fiscal crisis faced by municipalities and school districts caused by the limitations on their taxing authority. To this end, chapters 496 and 497 of the Laws of 1974 continued the exception from the constitutional limitation for pension and retirement benefits on a temporary, emergency basis. The same legislation established a temporary commission on constitutional tax limitations, which was to make recommendations for a more permanent solution to the local finance problem.[1] Thereafter, a proposed constitutional amendment to modify or repeal the real property taxing limitations was defeated by the voters.
The Legislature responded to this defeat by passing an additional enactment (L 1976, ch 349), again designed to allow certain municipalities and school districts to exclude pension and retirement benefits from the applicable constitutional tax limitations. Although the purpose of this legislation was stated to be the enactment of emergency provisions for the temporary solution of local finance problems, it was nevertheless held unconstitutional. As this court noted, this legislative effort amounted to “nothing more than an attempt to circumvent the constitutional limitation upon the amount of revenue that may be raised by local subdivisions of the State through the taxation of real property” (Bethlehem Steel Corp. v Board of Educ., 44 NY2d 831, 834, modfg 61 AD2d 147, app dsmd sub nom. City of Rochester v Waldert, 439 US 922). However, unlike the situation in Hurd, where the municipalities had relied upon the statute authorizing the excessive levies, thus justifying the Withholding of retroactive relief to the taxpayers, the municipalities in Bethlehem Steel had received ample notice, by virtue of the Hurd decision itself, that such a disregard of constitutional limits on their taxing authority would not be tolerated. Accordingly, we held that the taxpayers were entitled to establish their right to a refund of taxes paid in excess of the constitutional limitations “if such taxes were paid under appropriate protest” (id., at p 835).
*322 The City of Rochester, acting pursuant to the legislation described above, had continued to levy real property taxes in excess of the constitutional limitations for the tax years 1974-1975 through 1977-1978. Many real property owners paid the excess taxes “under protest”, but the taxpayers represented by appellant failed to register any protest to payment of their taxes. Following the decision in Bethlehem Steel, the city commenced this defendant class action against its taxpayers in order to prevent a multiplicity of separate lawsuits and to have all claims concerning the excessive levies resolved in one forum. Defendants interposed counterclaims on behalf of themselves and members of the class for refunds of the excess taxes paid. Special Term certified the class action, appointed class representatives and set down for threshold determination the issue of whether the nonprotesting taxpayers were entitled to recovery of the illegal taxes paid.[2] On the protest issue, Special Term ultimately concluded that the nonprotesting taxpayers are entitled to refunds, notwithstanding their failure to protest formally, because the imposition of a lien upon the real property and the exaction of interest for delinquent payment rendered the payments involuntary, thus excusing protest.[3]
The Appellate Division reversed, holding that the routine creation of a lien and the exaction of interest for nonpayment were insufficient to constitute the duress or coercion necessary to excuse the requirement of formal protest.[4] The court also restructured the classes placing *323 protestors and nonprotestors into separate subclasses, inasmuch as its determination of the protest issue rendered the interests of the two groups adverse.[5] The Appellate Division then granted the nonprotestors leave to appeal to this court, certifying a question as to the correctness of its order concerning the protest issue.
The rules concerning the circumstances under which recovery of a payment made pursuant to an assessment later declared illegal may ber had are well settled. Generally, the voluntary payment of a tax or fee may not be recovered (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 424-425; Adrico Realty Corp. v City of New York, 250 NY 29; Pooley v City of Buffalo, 122 NY 592). When a payment is made under a mistake of law, with actual or constructive knowledge of the facts, as in the present case, it is incumbent upon the taxpayer to demonstrate that payment was made involuntarily (Adrico Realty Corp. v City of New York, supra).[6] Payment of a tax under appropriate protest will ordinarily suffice to indicate the involuntary nature of the payment (Mercury Mach. Importing Corp. v City of New York, supra, at p 425). The failure to register formal protest, however, will be excused in cases in which the payment is made under duress or coercion. The duress necessary to indicate involuntariness is present in circumstances where payment of a tax is necessary to avoid threatened interference with present liberty of person or immediate possession of property (Mercury Mach. Importing Corp. v City of New York, supra, at p 425; Tripler v Mayor of City of N. Y., 125 NY 617, 626-627; see Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146, 150).
Although the test of involuntariness is easily stated, it is not quite as easy to apply. Recognizing that all governmental assessments are, in a sense, paid involuntarily, the determination is primarily one of degree, turning upon *324 numerous factors, including: “[T]he right of the taxing authorities to rely on objection if there be resistance to payment, the likelihood that authentic resistance will be asserted, the unavoidable drastic impact of the taxes or fees on the claimant, and the impact on the public fisc, if revenues raised long ago and expended are subject to reimbursement” (Paramount Film Distr. Corp. v State of New York, 30 NY2d 415, 420, cert den 414 US 829).
Turning to the present case, it is urged on behalf of the nonprotesting taxpayers that the circumstances under which the illegal taxes were paid demonstrate that the payments were coerced or involuntary. Pursuant to section 6-78 of the Charter of the City of Rochester, real property taxes become a lien on the property on the date they are levied (July 1). Although taxes are due on July 31, taxpayers are permitted to pay them in four installments; interest at an annual rate of 12% during the period in question is charged on delinquent payments. If the taxes remain unpaid, the lien may eventually be foreclosed and the property sold to satisfy the tax obligation. Moreover, under the standard mortgage, the mortgagee can require that the tax lien be removed to avoid a default on the mortgage. The nonprotestors maintain that payment of'a tax to remove the cloud on title caused by the tax lien and to avoid interest charges is involuntary. The city contends that, in the absence of enforcement proceedings or the threat of the same, the payments should not be considered coerced. In its view, the routine tax lien does nothing more than provide a warning of record to prospective purchasers that property is carrying unpaid property taxes, and the interest exacted is at a level which is not exorbitant or excessive.
We agree with the city that, considering the circumstances under which the nonprotestors paid real property taxes for the tax years in question, the payments were not made in a manner indicating “authentic resistance” to the tax. The city had taken no steps to enforce the remedy available to it to compel payment, nor had it threatened to do so; therefore payments made merely to remove the routine lien and to avoid interest charged at a reasonable level were not necessary to prevent interference with im *325 mediate possession of the taxpayers’ property. The method used by the city to compute real property taxes had been declared unlawful as early as 1974, putting all taxpayers on notice of the continuing possibility that taxes so levied, although pursuant to legislation, were constitutionally infirm. Yet, the nonprotestors continued to pay their taxes routinely and without resistance of any kind. It cannot be said that payments made under these circumstances were involuntary.
We recognize that there are cases indicating that duress may exist where an assessment is paid to remove a cloud on title and to halt the accrual of interest. In those cases, however, other factors were present further demonstrating the involuntary nature of the payments involved, including: the threat of proceedings to compel payment of the assessment (Boris Leasing Corp. v City of New York, 285 App Div 126, affd no opn 309 NY 682; see Bruecher v Village of Port Chester, 101 NY 240); the commencement by the taxpayer of proceedings to set aside or otherwise challenge the assessment before payment (People ex rel. Wessell, Nickel & Gross v Craig, 236 NY 100; Purssell v Mayor of City of N. Y., 85 NY 330); or the filing of some form of actual protest to payment (Adrico Realty Corp. v City of New York, supra; Effell Realty Corp. v City of New York, 165 Misc 176, affd no opn 256 App Div 972, affd no opn 282 NY 541). Moreover, the weight of more recent authority in this State is to the effect that imposition of a lien and/or exaction of interest, without more, falls short of what is to be recognized as duress in this context (see, e.g., Riverdale Country School v City of New York, 13 AD2d 103, affd no opn 11 NY2d 741; Title Guar. & Trust Co. v City of New York, 265 App Div 304, affd no opn 290 NY 910; Goldberg v City of New York, 260 App Div 61, affd no opn 285 NY 705).
Although it is difficult to classify precisely the holdings in the numerous cases decided on the issue of involuntariness, an examination of the varying contexts in which they have arisen demonstrates that the ultimate resolution turns upon consideration of the totality of the circumstances surrounding a given payment. Where such consid *326 eration leads to the conclusion that a payment was made without any indication of authentic resistance, then the payment must be considered voluntary.
Accordingly, the order of the Appellate Division should be affirmed, and the certified question should be answered in the affirmative.
Chief Judge Cooke and Judges Jasen, Jones, Fuchs-berg and Meyer concur; Judge Simons taking no part.
Order affirmed, without costs, and question certified answered in the affirmative.

. The effectiveness of this enactment was later extended through fiscal year 1975-1976 (L 1975, chs 322-325).

. Special Term’s initial order provisionally certified the class action, stayed commencement of additional lawsuits against the city and stayed the class action itself pending this court’s decision in a related case (Angelone v City of Rochester, 72 AD2d 445, affd 52 NY2d 982). Following this court’s affirmance in Angelone, Special Term ordered the city to submit a refund plan pursuant to the alternative prayer for relief in the city’s complaint. The refund plan thereafter submitted proposed to refund one half of the taxes illegally collected to all taxpayers, whether they protested or not. Although the city maintains that the nonprotestors are not entitled to refunds as a matter of legal right, it argued in the proceedings below that it may nevertheless recognize an equitable obligation to the nonprotestors pursuant to subdivision 5 of section 20 of the General City Law.

. Special Term’s ruling on protest rendered unnecessary any consideration of the city’s refund plan (see n 2, supra).

. The Appellate Division refused to consider the propriety of the city’s refund plan for the first time on appeal. Accordingly, issues concerning that proposal are not before this court (see nn 2, 3, supra).

. Thereafter, Special Term appointed provisional class representatives and counsel for the new subclasses for purposes of pursuing this appeal.

. Payments made pursuant to a mistake of fact, often present different considerations (e.g., Aetna Ins. Co. v Mayor of City of N. Y., 153 NY 331; Brehm v Mayor of City of N. Y., 104 NY 186, 189; Strusburgh v Mayor of City of N. Y., 87 NY 452, 456).