CITY OF ROCHESTER, Respondent, v ANGELO CHIARELLA et al., Individually and on Behalf of All Payers of Real Property Taxes to the City of Rochester for the Fiscal Years 1974-1975 Through 1977-1978, Respondents.

Fourth Department, December 16, 1983

**APPEARANCES OF COUNSEL**

*David J. Angelone* for appellants.

*Louis N. Kash, Corporation Counsel,* for City of Rochester, respondent.

*Harter, Secrest & Emery (Kenneth Payment* of counsel), for Angelo Chiarella and others, respondents.

*Johnson, Mullan, Brundage & Keighter (Byron Johnson* of counsel), for Subclass B, respondent.

*Levy, Feldman & Licata* for Subclass C, respondent.

*Harris, Beach, Wilcox, Rubin & Levey (Edward Fox* of counsel), for Subclass D, respondent.

OPINION OF THE COURT

DOERR, J.

In this class action involving the payment of unconstitutionally levied real property taxes in the City of Rochester, the Court of Appeals has determined that no legal right exists for the recovery of such taxes paid without formal protest (*City of Rochester v Chiarella,* 58 NY2d 316).[1] In an effort to carry out a long-standing policy determination, the Council of the City of Rochester adopted Ordinance No. 83-162. The ordinance preamble recites, as background, that some $45 million of unprotested unconstitutional taxes have been paid to the city for which a counterclaim has been interposed in the instant action; that the Court of Appeals has held that the city is not legally obligated to make refunds to nonprotesters; and that since 1978 it has been the declared policy of the city "to make refunds equally to all who paid unconstitutional taxes, as a matter of fairness, regardless of whether they protested." The ordinance then "recognizes the counterclaim of the non-protesters * * * as a claim equitably payable by the City, and * * * authorizes payment of such claim solely from the City's special fund for tax refunds" in an amount to be subsequently determined in a court-approved compromise, all pursuant to subdivision 5 of section 20 of the General City Law (Ordinance No. 83-162).[2]

On remittitur from this court,[3] Special Term ruled that Ordinance No. 83-162 (adopted shortly after the Court of

1. For a summarized history of this litigation, see *City of Rochester v Chiarella* (58 NY2d 316, 320-322, *supra*).

2. The city obtained an interest-free, open-term loan from the State of New York in the amount of $35 million (L 1981, ch 726).

3. In the class certification and protest phase of this case, the applicability of subdivision 5 of section 20 of the General City Law was raised on appeal. Since Special Term had not ruled on the question we declined to entertain the argument and remitted that issue to the court below (*City of Rochester v Chiarella,* 86 AD2d 110, 114-115).

Appeals decision) is a constitutional exercise of the authority conferred upon the city by subdivision 5 of section 20 of the General City Law. Subclass A-1 defendants, certified as protesters who oppose refunds to nonprotesters, feeling aggrieved, have appealed.

Appellant's principal reliance is on the prohibition contained in the New York Constitution which, in part, provides: "No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking" (NY Const, art VIII, § 1).

Special Term found that the constitutional prohibition against gifts and loans was no impediment to the adoption of the ordinance, which had the effect of waiving the procedural defect of failure to protest the payment of excess taxes and recognized the counterclaim of nonprotesters as a moral obligation and a claim equitably payable by the city. The court relied upon the following statutory provision:

"Subject to the constitution and general laws of this state, every city is empowered * * *

"5. To spend money for any public or municipal purpose; to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it, but it shall have no power to waive the defense of the statute of limitations or to grant extra compensation to any public officer, servant or contractor" (General City Law, § 20, subd 5).

The validity of the ordinance, therefore, depends upon whether the repayment to nonprotesters would be a constitutionally prohibited gift rather than the permissible payment of an equitable claim and whether the ordinance effects a waiver of the Statute of Limitations.

On the first issue, the power of the courts is limited to a determination of whether the facts presented sufficiently establish a recognizable equitable claim against the city. The decision of the city to pursue the course of acknowledging an equitable claim is a privilege and not an obligation and the wisdom of the choice is beyond the scope of the court's review (*Williamsburgh Sav. Bank v State of New*

*York,* 243 NY 231, 244-245). "The legislative policy is not the concern of the courts so long as the legislative enactment is within the Constitution" (*People ex rel. Eckerson v Board of Educ.,* 126 App Div 414, 419, affd 193 NY 601; see, also, *Cherey v City of Long Beach,* 282 NY 382, 392).

The question of whether the payment or repayment of moneys under the statute is the recognition of a "moral obligation" or "equitable claim" rather than a simple gift or gratuity is not reducible to any precise formula. Each case must be decided on the basis of its own facts. "Nonetheless, in every case there must exist an obligation which would be recognized, at least, by men with a keen sense of honor and with real desire to act fairly and equitably without compulsion of law. The Constitution does not prohibit the Legislature from doing in behalf of the State what a fine sense of justice and equity would dictate to an honorable individual. It does prohibit the Legislature from doing in behalf of the State what only a sense of gratitude or charity might impel a generous individual to do." (*Ausable Chasm Co. v State of New York,* 266 NY 326, 331.) Thus, no moral obligation can arise and no equitable claim can be established where no benefit is conferred on the city (*Matter of Chapman v City of New York,* 168 NY 80), or where there is no legal liability for services and none were performed (*Matter of Mullane v McKenzie,* 269 NY 369; *Stemmler v Mayor of City of N. Y.,* 179 NY 473).

When the only impediment to legal liability lies in a technical defect which bars an otherwise valid claim, a recognizable moral and equitable obligation arises on which the city may act (*Matter of Shaddock v Schwartz,* 246 NY 288; *Matter of Chapman v City of New York, supra,* p 85). Thus, in *People ex rel. Eckerson v Board of Educ.* (*supra,* p 419) where taxpayers failed to follow the proper statutory remedy in seeking to recover taxes found by the court to be excessive, the court stated: "[t]he moral obligation to refund an excessive tax is just as strong whether it was paid voluntarily or by duress, for the ground thereof is a payment beyond that which should in justice have been charged." While the nonprotesters may not have had an expectation of repayment at the time they paid the unconstitutionally levied taxes, it cannot fairly be said that these

taxes were paid voluntarily. The only difference between the legal liability the city owes to the protesters and the moral obligation owed to the nonprotesters is the lack of formal protest, not the relative willingness of each group to pay taxes.

Appellant's reliance on *People ex rel. New York Edison Co. v Prendergast* (185 App Div 461, affd 226 NY 573) is misplaced. The only issue raised in that case was whether petitioner could recover under a provision of the New York City Charter. The question of unconstitutional gifts vis-à-vis equitable claims was not raised.

■ Ordinance No. 83-162 does nothing more than recognize the claims of the nonprotesters as equitable claims and provide that any compromise with nonprotesters be limited to the amount available in the city's special fund for tax refunds. The effect of the ordinance is to give the nonprotesters standing to remain in the class action. Under the facts here presented, the enactment of the ordinance was a proper exercise of the legislative function by the Council of the City of Rochester without violating the Constitution. Nothing in the ordinance affects the legal claims of the protesters against the city which have been established earlier (*City of Rochester v Chiarella*, 58 NY2d 316, *supra*).

■ There remains the consideration of whether Ordinance No. 83-162 violates the prohibition of subdivision 5 of section 20 of the General City Law against waiver of the defense of the Statute of Limitations. The authorities cited by appellant concern situations where plaintiffs had a valid legal claim, which subsequently became unenforceable due to the running of the Statute of Limitations. These cases are inapplicable to the instant action. In any event, the nonprotesting taxpayers never had legally enforceable claims which could be subjected to a Statute of Limitations defense. A challenge to a tax statute alleged to be unconstitutional may be treated as a plenary action for money had and received for which the applicable limitations period is six years (*Matter of First Nat. City Bank v City of New York Fin. Admin.*, 36 NY2d 87). The first illegal tax assessment was made on July 1, 1974. The counterclaim of the nonprotesting taxpayers was inter-

posed on June 26, 1980 and, thus, the action would have been timely commenced.

Accordingly, the order of Special Term should be affirmed.

HANCOCK, JR., J. P., CALLAHAN, DENMAN and MOULE, JJ., concur.

Order unanimously affirmed, without costs.