OPINION OF THE COURT
Simons, J.
This appeal concerns efforts by Rochester taxpayers to obtain refunds for taxes illegally assessed against them by the city and which they paid under protest. The claims are based upon several earlier rulings of this court. In Hurd v City of Buffalo (34 NY2d 628), we held taxes levied by the City of Buffalo in 1971-1972 invalid because the municipality had violated provisions of the State Constitution which prohibit raising revenues in any year by taxation of real property in an amount exceeding 2% of the average full value of real estate within the municipality (see, NY Const, art VIII, § 10). Buffalo had violated that provision and exceeded its constitutional taxing powers by excluding from the total levy amounts levied to satisfy municipal liability for employees’ benefits. Although we found the taxes unconstitutional, we agreed with the Appellate Division that the declaration of unconstitutionality should not act retroactively to permit recovery of the taxes paid because the city had relied upon a State statute authorizing the practice and to require it to refund the sums collected would impose undue hardship (id., affg 41 AD2d 402, 405-406). Four years later, in Waldert v City of Rochester and companion cases (44 NY2d 831), we invalidated similar tax levies by the Cities of Rochester and Buffalo and the Geneva School District, and the statutes on which they were predicated, on precisely the same ground (see also, Angelone v City of Rochester, 52 NY2d 982). We permitted protesting taxpayers to seek refunds of the excess amount of taxes paid as a result of the unlawful levy, however, finding the statutes and the taxes based on them a “palpable evasion” of the constitutional limitations upheld in Hurd.
The taxpayers’ claims in this action seek to recover the amount paid in excess of the taxes lawfully levied in the tax years 1974-1975 through 1977-1978. They are asserted as counterclaims in a class action instituted by plaintiff City of Rochester pursuant to CPLR article 9. Defendants Stephen and Charlene Sercu are representatives of subclass A-l and represent some of the taxpayers who protested the unlawful tax levies for those years.* The Appellate Division granted them and members *97 of their subclass partial summary judgment (see, 100 AD2d 46). Plaintiff city and the other defendants, representatives of subclasses A-2, B, C and D, appeal from that order.
Following our 1978 ruling in Waldert, the city has tried several devices to alleviate the financial burden of paying the anticipated refund claims. Originally, it passed an ordinance directing refund of all overpayments, whether paid under protest or not, and authorized an additional tax to fund the expense. It implemented the ordinance by including an item of additional tax on each property tax bill, the sum needed to pay the individual taxpayer’s claim, and then it “paid” the claim for past overcharges by crediting the taxpayer with payment of the additional charge. It was a paper transaction in which the city, in its own words, “robbed Peter to pay Peter” and the Appellate Division declared the ordinance unconstitutional (see, Angelone v City of Rochester, 72 AD2d 445, 448). After the Appellate Division decision, the city commenced this preemptive class action seeking to avoid a multiplicity of lawsuits and resolve all claims in one forum. Notwithstanding our prior decisions expressly holding otherwise, the city denied in its complaint that it had levied any illegal taxes in the years in question or that it owed refunds to any taxpayer. Urging that many lawsuits to recover refunds had been threatened or instituted, it sought certification of the class action, a stay of all claims or counterclaims until this court reviewed the Appellate Division’s decision in the Angelone action and a declaration that the taxes for the years in question were legal. In the event that it lost the Angelone appeal, the city asked for a declaration of the rights of the parties in the class action and an order directing the method and terms for payment of refunds. We affirmed the Appellate Division order in Angelone (52 NY2d 982, supra) and thereafter Special Term certified the class action, structured several classes, and ordered that all pending actions, including that of the Sercus, be consolidated with it. The defendants answered and asserted counterclaims seeking refunds and the court granted the city an indefinite extension of time to reply to them.
After the class action was certified, the city submitted a plan for settlement. It proposed to reimburse all taxpayers equally, *98 whether they had protested or not, but to pay them only 50% of the overpayment (utility companies were treated separately). Payment was to be made from a special fund consisting of $35 million received from the State and an additional $1.6 million contributed by the city. After the city submitted its plan, some of the protesters contested the right of nonprotesting taxpayers to be paid. Special Term held for the nonprotesters but the Appellate Division reversed (City of Rochester v Chiarella, 86 AD2d 110) and we affirmed its order (58 NY2d 316). The city then undertook to pay nonprotesters’ claims from the special fund by adopting an ordinance pursuant to General City Law § 20 (5). That statute permits the city to recognize some moral obligation claims by waiving the legal defenses to them. When the appeal challenging the validity of the ordinance reached us, we held the ordinance constitutional and effective to permit refunds to non-protesting taxpayers. In doing so, however, we noted that we did not decide what effect recognition of the nonprotesters’ rights and limiting the source of their recovery to the special fund would have on the right of protesters to full refunds (see, City of Rochester v Chiarella, 63 NY2d 857). That issue is before us on this appeal by the city and defendants as a result of the Appellate Division’s order reversing Special Term and granting the Sercus and the members of subclass A-l partial summary judgment.
Although the city denies it in its complaint, all the parties expressly or tacitly agree that the taxes for the years in question and the statutes authorizing them were unconstitutional and we have held them so repeatedly (see, e.g., Waldert v City of Rochester, 44 NY2d 831, supra; see also, Niagara Mohawk Power Corp. v City School Dist., 59 NY2d 262; Central Buffalo Project Corp. v City of Buffalo, 52 NY2d 986; Angelone v City of Rochester, 52 NY2d 982, supra; Hurd v City of Buffalo, 34 NY2d 628, supra). Indeed, the city has appealed to this court three times, implicitly conceding the illegality on each occasion and urging that all taxpayers, protesters and nonprotesters alike, should receive equal treatment when refunds are made. In view of that, there would seem to be no reason why the general issue of the invalidity of the taxes should not be removed from the litigation for the benefit not only of the protesting taxpayers but for the nonprotesters also. Thus, it comes as no surprise that the Appellate Division thought no serious question of illegality remained and granted the application of subclass A-l members for partial summary judgment, remitting the matter for proof of the validity of the individual protester’s claims and for assessment of damages.
*99 Appellants object to the Appellate Division order on several grounds. On the merits they contend first that the ordinance recognizing the claims of nonprotesters requires that they be treated equally with protesters and that the effect of the Appellate Division’s order granting summary judgment is to create an improper preference to the assets of the special fund for members of subclass A-l. Second, the city contends that summary judgment must be denied because it possesses a valid defense to the taxpayers’ causes of action for money had and received based on value the taxpayers received in return for their money. Third, appellants contend that since this is a class action, the claims of the Sercus’ and other protesting taxpayers must be subject to the contemporaneous disposition of all claims, protesters and nonprotesters alike, and, considering the city’s financial plight, that the claims must be compromised. Procedurally appellants contend that the motion must be denied because the Sercus had neither the status nor authority to make their motion and that the motion is premature because the city has not yet replied to defendants’ counterclaims.
 We agree with the holding implicit in the Appellate Division’s decision that the Sercus had the authority to move for accelerated judgment but hold that the motion is premature because the city has not replied to the counterclaims. We reverse its order, therefore, and address the points advanced by appellants as they are necessary to our decision.
Taxes assessed and collected in violation of constitutional authority or otherwise void for want of jurisdiction may be recovered by the taxpayer in a plenary action for moneys had and received (Matter of First Natl. City Bank v City of New York Fin. Admin., 36 NY2d 87, 93; New York R. T. Corp. v City of New York, 275 NY 258, 264, affd 303 US 573). The taxpayer must establish that the taxes were paid involuntarily to succeed but if he does, he may recover the overpayment in a timely action (City of Rochester v Chiarella, 58 NY2d 316, supra; Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 426; and see, Bethlehem Steel Corp. v Board of Educ., 44 NY2d 831, 835; Niagara Mohawk Power Corp. v City School Dist., 59 NY2d 262, supra). After obtaining judgment, the taxpayer becomes a judgment creditor and, like any other judgment creditor, is entitled to be paid from general city funds or by executing on city property. If the city is unable to pay the judgment from current funds, it may borrow for that purpose {see, Local Finance Law § 11:00 [a] [33], [33-a]).
*100 Much of appellants’ opposition to this partial judgment is based upon their claim that the Appellate Division order prefers the protesters and gives them an opportunity to consume the assets of the special fund before the rights of other claimants are resolved. They contend that the nonprotesters’ claims, once recognized, are on an equal footing with those of the protesters and that all refunds must be authorized at the same time and paid rateably from the special fund. Nothing about the Appellate Division order mandates payment, however; it only moves the parties closer toward a determination of the individual claims. But more importantly, appellants are mistaken when they assert that the protesting taxpayers are limited to satisfying their claims from the assets of the special fund. The protesting taxpayers’ claims are a matter of legal right (see, City of Rochester v Chiarella, 58 NY2d 316, supra), whereas the nonprotesters’ claims have been created by the city as a matter of grace where none existed before. The city can limit the right of the nonprotesters to recover, as it did here, by directing that nonprotesters be paid “solely from the City’s special fund for tax refunds” (Ord No. 83-162; emphasis in original), but it cannot restrict the source of payment of the protesters claims or make payment of their judgments contingent on the moneys available in the special fund any more than it could limit the rights of other judgment creditors (see, Cherey v City of Long Beach, 282 NY 382, 389).
We see no need to pass on the city’s remaining substantive points. Insofar as it claims a defense based upon value rendered for the taxes paid, that defense goes to mitigation of damages, as the city concedes, not abatement of the claims. Similarly, we see no need to decide at this time what power the court has to compel a disposition of this class action by settlement. A determination on liability will not foreclose either defense if it has merit.
Nor do we agree that the Sercus lacked the standing or authority to pursue this relief. A class representative acts as principal to the other class members and owes them a fiduciary duty to vigorously protect their interests (see, Sonnenschein v Evans, 21 NY2d 563; Spatz v Wide World Travel Serv., 70 AD2d 835; 2 Weinstein-Korn-Miller, NY Civ Prac If 901.15, at 9-55 — 9-56; Homburger, The 1975 New York Judicial Conference Package: Class Actions and Comparative Negligence, 25 Buffalo L Rev 415, 428). That responsibility clearly encompasses the duty to act affirmatively to secure the class members’ rights as well as to oppose the adverse interests asserted by others. Although *101 the order appointing the Sercus directed them to oppose payments to nonprotesting claimants, that did not limit their authority to make this motion and the supervising Judge who appointed them apparently recognized as much when he denied their motion without prejudice to renew. He refused to entertain the motion at that time because an appeal was pending to determine the rights of nonprotesters and because the motion, made pursuant to CPLR 3211 (b) and 3212, was premature in the absence of plaintiff’s reply to the counterclaims. The rights of nonprotesters have now been resolved (see, City of Rochester v Chiarella, 63 NY2d 857, supra). Thus, the only remaining basis for his order is prematurity and it is this ground which requires reversal of the Appellate Division order.
A motion for summary judgment may not be made before issue is joined (CPLR 3212 [a]) and the requirement is strictly adhered to (see, Miller v Nationwide Mut. Fire Ins. Co., 92 AD2d 723; Alro Bldrs. & Contrs. v Chicken Koop, 78 AD2d 512; Milk v Gottschalk, 29 AD2d 698 [Gabrielli, J.]; Siegel, NY Prac § 279). The Appellate Division recognized this rule but held that the city’s complaint sought a declaration that the taxes were constitutionally levied and that no refunds were due. It held therefore that the counterclaims raised no new issue requiring a reply and it entertained the Sercus’ motion.
The appropriate response to a counterclaim is a reply (CPLR 3011; Siegel, NY Prac § 229). It serves the same function with relation to a counterclaim that an answer serves to a complaint. Because the city had not replied to the Sercus’ counterclaim, their 3212 motion for summary judgment preceded joinder of issue and was untimely (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3212:12, p 432).
A 3211 (b) motion may be addressed to a reply but that motion was not available to the Sercus because there had been no reply to their counterclaim and the motion could not be used to anticipate defenses based upon the general denials of liability alleged in the complaint. Indeed, even when properly asserted, after an answer or reply has been submitted, a 3211 (b) motion cannot be used to strike general denials as contrasted with specific defenses such as those contained in CPLR 3018 (b) (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3211-.38, 1970-1984 Supp Pamphlet, pp 10-11). Finally, CPLR 3211 (c) permits the court, on notice to the parties, to treat a motion to dismiss made pursuant to subdivision (a) or (b) as a motion for summary judgment before issue is joined (see *102 generally, Siegel, NY Prac, at 328). The motion is available to a party attacking a pleading who has not pleaded yet, a defendant moving against a complaint before answering, for example, but it may not be used by a pleader such as the Sercus to foreclose a responsive pleading before an opponent has had a chance to answer the claim. Thus, their motion for partial summary judgment and to dismiss was premature and Special Term properly denied it.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion denied without prejudice to renew after submission of a reply. The certified question should be answered in the negative.
Chief Judge Wachtler and Judges Jasen, Meyer, Kaye and Alexander concur.
Order reversed, etc.

 The over-all subclass structure is as follows:
A — All Protesters
1. Protesters who oppose refunds to nonprotesters.
2. Protesters who favor refunds to nonprotesters.
*97 B — City property owners from 1974-1978 who have transferred their property.
C — City property owners whose assessments have been lowered since 1974-1978.
D — Nonprotesters.
The city and representatives of subclasses A-2, B, C and D have filed appellants’ briefs in this court.