Bellacosa, J.
(dissenting). Concededly and no longer at issue in this case, the $27,000 water sewer tap-in fee paid by Video Aid Corp. to the appellant Town to secure a building permit was unconstitutional, as declared by Supreme Court. The sole issue that divides this Court is whether the Appellate Division order directing the Town to make reimbursement is erroneous. We think it is not.
The Appellate Division applied this Court’s calibrated, fact-specific analysis (see, City of Rochester v Chiarella, 58 NY2d 316, 323-324), and concluded, in affirming Supreme Court, that the payment was made under legal duress (203 AD2d 554, 556-557). Thus, our review of this case is framed by supportable findings and inferences that justify the conclusion that Video Aid’s $27,000 additional, special payment was unlawfully exacted by the Town. We respectfully dissent from this Court’s reversal of a supportable and proper result, and we would affirm.
We first draw attention to the fact that in a variety of contexts, this Court has demonstrated an appropriate intolerance for allowing governmental entities to exact unwarranted payments from licensees or permittees, whether in exchange for favorable treatment (City of New York v 17 Vista Assocs., *671 84 NY2d 299), or in exchange for granting that to which the permittee was entitled absent the illegally charged fee (see, e.g., Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146; Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 NY 558). The most recent precedent, albeit in a different but relevant fact pattern, is City of New York v 17 Vista Assocs. (84 NY2d 299, supra). We unanimously held void as against public policy an agreement entered into between the plaintiff New York City and the defendant builder in which, for a $1.5 million payment, the City would grant an accelerated and favorable determination as to the single-room occupancy multiple dwelling status of the affected building (id., at 306). The reasoning is instructive:
"The [municipality] had a duty to render its determinations * * * based solely on a review of the relevant criteria. The law should not be applied more favorably * * * based on whether or not a party is able to pay” (84 NY2d 299, 306, supra).
This general principle — that municipalities cannot shirk or creatively manipulate their responsibilities to render independent determinations and that they must grant permits based on merit and not just for enhanced revenue generation — is equally applicable in the setting of the instant case. Notably, no one any longer quarrels that the fee in question is and was unconstitutional. The defendant Town’s attorney, in his own affidavit supporting the Town’s cross motion to dismiss Video’s complaint, stated that the fee schedule was designed to "spread[ ] [t]he costs * * * necessitated * * * by the $12,000,000.00 sewer plant mandated by the DEC,” and that "[t]he obvious costs of paying the outstanding bond on the $12,000,000.00 sewer plant * * * clearly required that some equitable [as the Town decided to spread it] system be imposed.” The rationale of 17 Vista Assocs. and the other cases is cogent and instructive support for affirmance in this case. Moreover, no sufficient reason is advanced to countermand the Appellate Division’s rationale and conclusion that Video Aid’s water/sewer fee payment was made involuntarily and under legal duress.
The rules regarding the "voluntary versus involuntary/legal duress” determination are well established. In City of Rochester v Chiarella (58 NY2d 316, supra), this Court reaffirmed and rearticulated the long-standing principles governing a citizen’s right to a refund of tax, licensing or similar payments *672 that are unconstitutionally "exacted” by a governmental entity. Failure to register a formal, simultaneous protest when making the payment is excusable when a payment "is made under duress or coercion” (City of Rochester v Chiarella, supra, at 323). Illustrative duress rising to the level of involuntariness may be found in situations when a payment is made "to avoid threatened interference with present liberty of person or immediate possession of property” (City of Rochester v Chiarella, supra, at 323, citing Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 425; Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146, 150, supra). In City of Rochester, the Court reflected the nuances in applying the test as follows:
"Recognizing that all governmental assessments are, in a sense, paid involuntarily, the determination is primarily one of degree, turning upon numerous factors, including * * * 'the likelihood that authentic resistance will be asserted, the unavoidable drastic impact of the taxes or fees on the claimant, and the impact on the public fisc, if revenues raised long ago and expended are subject to reimbursement’ (Paramount Film Distr. Corp. v State of New York, 30 NY2d 415, 420, cert denied 414 US 829)” (City of Rochester v Chiarella, 58 NY2d 316, 323-324, supra [emphasis added]).
Consistent with long-standing precedents, the Court engaged in a fact-specific analysis looking to the "totality of the circumstances surrounding [the] * * * payment” (id., at 325).
Contrary to the appellant Town’s claim here, adopted by the majority, City of Rochester and this Court’s related precedents do not compel a finding, as a matter of law and at this level of judicial review, that the water/sewer fee payment is nonreimbursable (see, City of Rochester v Chiarella, supra; Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 419-422, supra; Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146, 149-150, supra; American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 NY 565). In determining whether a particular payment is involuntary and, hence, reimbursable, this Court has prescribed inquiry into specific factors: (1) whether the fees were reasonable regulatory measures or revenue-raising devices (Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 420, supra); (2) whether the taxing governmental authority was enriched *673 by the payment (id., at 421-422); and (3) whether the governmental authority had already distributed the funds (id., at 422). Thus, for example, in Paramount, this Court examined all the circumstances and held that claimants could not recover motion picture licensing fees after the statutes authorizing the fees were nullified. The Court declared that (1) the payment was not involuntary or legally coerced, (2) the government was not unjustly enriched, (3) the fees merely defrayed the cost of the licensing program and did not produce revenue, and (4) the collected funds had been disbursed long ago.
The instant case, as resolved by the majority, stands in stark contrast to Paramount (30 NY2d 415, supra), with each of the Paramount factors favoring reimbursement to Video Aid as a matter of fact and, therefore, surely not the opposite result as a matter of law. Here, the Town asserted that the resolution promulgating the fees at issue was designed expressly to raise the revenue to offset the $12 million bond it had issued to upgrade its Town-wide water and sewer facilities. Thus, it was not a mere fee for a licensing/regulatory program, as in Paramount. Additionally, here, Video Aid Corp. sued almost immediately after paying the fee in return for the issuance of the building permit. This reflected an "authentic resistance” as public, certain and cogent, if not more so, than payment with a "protest” notation placed on a check (City of Rochester v Chiarella, 58 NY2d 316, 323-324, supra). To hold that simply writing "under protest” on the payment instrument constitutes "authentic resistance,” but that plaintiff actually commencing suit almost immediately after payment fails (see, majority opn, at 667, 668, 669, 670) is perplexing, especially since the suit was successful. Given the promptness of the lawsuit in the instant case, concerns regarding the potential for imposing crushing burdens on a municipality to reimburse levies and fees wrongfully paid by citizens but already disbursed by the municipality are not real or cognizable. Thus, Paramount supports affirmance here.
Video Aid Corp.’s position is further buttressed by this Court’s decision in Five Boro Elec. Contrs. Assn. v City of New York (12 NY2d 146, supra) and some Appellate Division decisions affirmed by this Court (see, American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 NY 565, supra; Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 NY 558, supra). In Five Boro, electricians were held entitled to recover excess licensing fees exacted by *674 the municipality, although the exorbitant fees had been paid without immediate or simultaneous protest (12 NY2d 146, 149, supra). Again, focusing on the particular facts of the case, this Court reasoned that failure to pay the fee would have resulted in precluding the claimants from earning a livelihood (id., at 149-150). The Court noted that "[ú]ndue interference with the conduct of a business or occupation through an obstructive use of the licensing power ha[d] been held to constitute duress” (id., at 150, citing American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 NY 565, supra). The Court likened this form of legal duress to the "business compulsion” rule, where recovery was permitted to persons or corporations "wholly or partly prevented from engaging in business unless the illegal exactions were paid” (Five Boro Elec. Contrs. Assn. v City of New York, supra, at 150 [emphasis added]). In concluding that "[n]othing is presented here to show that plaintiffs 'were wholly or partly prevented from engaging in business’ ” (majority opn, at 669), the majority chooses to ignore (1) the evidence in the record that the permit would not issue unless the fee was paid; and (2) the practical reality that, without the permit, the vacant space could not be used for conducting Video’s expanded business properly.
Notwithstanding the majority’s pinched view of the record (see, majority opn, at 669), the Appellate Division had evidentiary support for its finding of involuntariness. A letter of transmittal from Liscum-McCormack-Vanvoorhis, an architectural firm located in Poughkeepsie, to Video’s vice-president demonstrates that the architect had prepared a building permit application, along with complete plans for the expansion, and that the plans were submitted to the Town of Wallkill Building Inspector. The cover letter from the architect (1) gives notice to the Town that work could commence no later than the first week of January 1992; and (2) that the enclosed expansion plans had been sealed by the architect’s office and an engineer. It further stated that all inquiries by the Building Inspector should be funnelled back to the architect. This constitutes ample direct and inferential evidence for the Appellate Division to find an existing, ongoing, and well-defined contractual relationship between Video Aid and the architectural/engineering personnel responsible for the expansion. Necessarily related thereto, legal commitments in the ordinary course of municipal business no doubt had to be included as predicates to even filing a formal permit application and *675 having it considered at all by the Building Inspector and Town. Towns are not in the business or habit of rendering advisory rulings, any more than courts are. Further, the affidavit of Video Aid’s vice-president in support of Video Aid’s motion for summary judgment explicitly states that (1) "plans and specifications [had been] prepared by the architect”; (2) "[architects were hired as well as engineers and designers to plan the build-out of the space”; (3) it was made "absolutely clear * * * that without the payment of the water and sewer hookup fees, no Building Permit would be issued”; (4) the expansion "needed to occur on a fairly tight timetable”; and (5) "the pressures of commitments made for this space made it necessary to move forward.” The refusal to pay the water/sewer fee and consequent withholding of the permit translated into a bold and substantial interference with Video’s ability to conduct "in part” its business in a manner otherwise lawfully permissible (Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146, 150, supra).
While the majority asserts that Video Aid did not supply evidence of duress or harm that would be occasioned by nonpayment of the unconstitutional fee (majority opn, at 668, 669, 670), that claim is cogently contradicted by the record, as we have demonstrated. Video showed that it (1) was in the process of closing on the sale of the premises, (2) had stringent time constraints, (3) had contracted with architects and engineers to plan and supervise the expansion, (4) had submitted completed plans for approval to the Town, (5) had commitments for the space, and (6) needed the area to conduct its business properly. As in Buckley (30 App Div 463, affd 159 NY 558, supra), every delay would have necessarily resulted in escalating pecuniary injury, both directly due to lost profits and, indirectly, based on architect and engineering fees and commitments attendant to the expansion.
The fact that Video Aid Corp. paid tribute for issuance of permits for an expansion of its business, as opposed to obtaining a license to open a business, does not diminish the coercive effect of the governmental action and the involuntary nature of this particular payment of an unconstitutional fee. Existing principles and precedents, in our view, support this conclusion. If they do not, they ought to.
Further, other well-established precedents also support our view that reimbursement of the illegal exaction is proper here. In American Dist. Tel. Co. v City of New York (213 App *676 Div 578, supra), affirmed by this Court without opinion (243 NY 565), the holding was that a plaintiff, who entered a franchise agreement with the City under threat that, otherwise, plaintiff could not continue its business, could recover the fees paid for the franchise (213 App Div 578, 583-585, supra). Noting the circumstances — large sums of money required to be paid by plaintiff and the valuable property right at stake — the Court there determined that it was "not probable that this plaintiff voluntarily acquiesced in the demand of the city” (id., at 583).
In Buckley v Mayor of City of N. Y. (30 App Div 463, supra), also affirmed by this Court, without opinion (159 NY 558), the holding was that recovery of fees was warranted where the property owner, engaged in building an apartment house, was threatened that his workers would be arrested unless a building permit fee was paid (30 App Div 463, 464-465, supra). The reasoning is instructive:
"The defendant’s threats were certainly threats of actionable acts whereby [plaintiffs] estate would be lessened. Every day that was thus lost to him was a serious pecuniary injury. * * * It was the threatened exercise of power which [plaintiff] believed they possessed that was likely to take money out of his pocket every day that it continued. Interest on his capital would be running, and increment from rents would be postponed” (id., at 466).
The Court focused not only on the threat to arrest (which the Town claims is critical), however, but also on the loss to be visited on the plaintiff (which the Town and majority largely ignore). The Court concluded that, notwithstanding the equitable and legal remedies available to the plaintiff there, the time it would have taken to pursue such actions to fruition "might have * * * ruined [plaintiff] before even partial redress could [have been] afforded him” (30 App Div 463, 467, supra).
In the instant case, the Town’s failure to grant Video Aid the building permit held hostage the licensee’s business expansion into the vacant space and rendered it an unattainable goal, unless an unconstitutional water/sewer tap-in fee was paid. Thus, at least, it "partly prevented [Video] from engaging in business” (see, Five Boro, supra, at 150). Notwithstanding the $11,000 already paid by Video Aid for the building *677 permit — which payment entitled it to the permit — the Town forced Video to pay an additional $27,000 to do what Video should already have been entitled to do. Given the large sum exacted and the valuable right at stake, namely, expanding its business and conducting that business properly, it is "not probable” Video "voluntarily” made the payment (see, American Dist. Tel. Co. v City of New York, 213 App Div 578, 583, a(fd without opn 243 NY 565, supra). Indeed, based on a reasonable application of the rubrics we have articulated, the Appellate Division rightly concluded that the payment was legally coerced under the circumstances of this case.
The concededly unconstitutional fee, an undisguised revenue-raising measure, exacted as a precondition to granting an otherwise authorized and already qualified and paid-for building permit, should result in the only appropriate and proportionate remedy: reimbursement to Video of the unconstitutional fee. Under the circumstances of this case, we disapprove allowing the Town (1) to "appl[y] [the law] more favorably * * * based on whether or not [Video] [was] able to pay” (City of New York v 17 Vista Assocs., 84 NY2d 299, 306, supra); (2) to permit itself to become unjustly enriched at Video Aid’s expense (see, Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421-422, supra); and (3) to allow the declaration of now-conceded unconstitutionality of the fee to be rendered a Pyrrhic victory for the payor.
In our view, most respectfully, application of all the relevant factors and legal principles warrants affirming the Appellate Division’s order requiring the Town of Wallkill to reimburse Video Aid Corp. for the $27,000 unconstitutional fee it paid for issuance of the permit.
Chief Judge Kaye and Judges Simons and Smith concur with Judge Ciparick; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judges Titone and Levine concur.
Order, insofar as appealed from, reversed, etc.