OPINION OF THE COURT
 

 Smith, J.
 

 The principal issue presented is whether a developer’s promise to pay money to a low-income housing trust in exchange for an expedited and favorable determination for construction permits by a municipality is void as violative of public policy.
 

 I
 

 The Seamen’s Church Institute of New York and New Jersey (the Institute), a not-for-profit religious corporation, maintained headquarters at a State Street site in New York City at which it housed seamen who were in New York between voyages. The certificate of occupancy described the building as a class B multiple dwelling. The occupancy level of the building decreased with the decline of merchant shipping. In the 1980’s, the continuing decline in occupancy, as well as mounting operating costs, threatened the Institute’s survival. It therefore determined that it was necessary to sell the building. In July of 1984, the Institute entered into a contract to sell the property to the defendant 17 Vista Associates
 
 *303
 
 (Vista) for $29,000,000. Vista intended to demolish the existing building and erect a high-rise office tower. Closing was scheduled for March 4,1985.
 

 In late February of 1985, however, Vista informed the Institute that it would not close on the sale because its application for a demolition permit had been denied by the Department of Buildings. At issue was the possible application of Local Laws, 1983, No. 19 of the City of New York (now codified as Administrative Code of City of NY § 27-198 [b]), which provided that before the Department of Buildings could issue a permit to alter or demolish a single-room occupancy multiple dwelling (SRO), the owner of the building had first to apply for and obtain from the Commissioner of the Department of Housing Preservation and Development (HPD) a certificate that there had been no harassment of SRO residents, or apply for an exemption from the requirement.
 

 The Institute and Vista agreed to adjourn the closing pending a determination by plaintiff City that the building was not subject to Local Law No. 19.
 
 [1]
 
 According to Ralph Smith, a member of the board of managers of the Institute, a meeting was held on April 29, 1985 between representatives of the Institute and City officials. After the Institute presented its case for an exemption, the City, according to Smith, "made it clear” that the exemption would not be granted unless the Institute and Vista each made a substantial payment to the City to benefit the homeless. Resolution of the Institute’s entitlement to the exemption would have taken considerable time due to the need for an independent investigation, and the Institute allegedly needed the proceeds of the sale immediately to remain in operation. According to then Commissioner of HPD Anthony Gliedman, the City, therefore, decided to grant the Institute the exemption, without conducting the usual independent evaluation, provided Vista paid $500,000 into a trust created to provide low- and middle-income housing
 
 *304
 
 without restriction to seamen. The Institute was also to contribute $1,000,000 from the proceeds of the sale to the trust, known as the 15 State Street Housing Trust, of which two named plaintiffs, City officials, were to serve as trustees.
 

 The Institute and Vista signed the agreement dated July 24, 1985, pursuant to which Vista purchased the property for $29,000,000.
 
 [2]
 
 Vista also agreed to pay the $500,000 to the trust upon satisfaction of the earliest occurrence of any one of four conditions. On the same date the contract was signed, July 24, 1985, the City, by letter from the general counsel of HPD, issued its determination that the Institute’s building was not an SRO. The letter was from Valerie Asciutto, general counsel of the Department of Housing Preservation, to Luis Munoz, general counsel of the Buildings Department, with copies to the Institute and Vista. It read as follows:
 

 "Based on representations of the Seamen’s Institute of New York and New Jersey (the 'Institute’) and by attorneys and advisors retained and paid by the Institute, the Department of Housing Preservation and Development has determined that the Premises do not constitute a single room occupancy multiple dwelling under Local Law 19 of 1983 of the City of New York because the referenced premises have been used for an 'institutional use’ within the meaning of such law. Conse
 
 *305
 
 quently, a certificate of no harassment is not required under such law. Furthermore, should the Mayor sign City Council bill 885-A as it was enacted by the Council on July 11, 1985, the Premises, for the same reason and based upon the same representations, will not be considered a single room occupancy multiple dwelling thereunder.”
 

 Also on that date, the Institute paid $1,000,000 to the trust and Vista signed the promissory note for $500,000, which note was also turned over to the trust.
 

 The record reveals that an application for a demolition permit filed by Vista had already been approved by the Department of Buildings on July 12, 1985. Further, the permit application containing the notation, "No SRO. No Landmark. No Special Dist.”, was dated February 6, 1985 and bore the initials of an employee. Vista, however, had never been informed of the approval of this permit application.
 

 After the Department of Buildings issued a permit to Vista on October 1, 1986, the trustees demanded payment on the $500,000 note. The defendants refused to pay and the plaintiffs instituted this action for breach of contract and failure to pay the promissory note. In their answer, the defendants contended,
 
 inter alla,
 
 that the City did not timely issue the necessary permit as required by the promissory note, and, therefore, payment under the note was not due and owing. They further maintained that since Vista was required to execute the note because of the SRO laws which were later declared unconstitutional, the note was null and void. They also raised duress as an affirmative defense. In their counterclaim, the defendants sought damages in the amount of $70,000,000, allegedly caused by the City’s dilatory actions in issuing the necessary permit. Allegedly due to the City’s delay, the new building was not completed until late 1988, after the stock market decline of 1987, when the real estate market similarly declined.
 

 The plaintiffs thereafter moved,
 
 inter alla,
 
 for summary judgment on the complaint and for summary judgment dismissing the defendants’ affirmative defenses and counterclaim. The defendants cross-moved for summary judgment dismissing the complaint and for leave to file an amended counterclaim. The Supreme Court,
 
 inter alla,
 
 awarded the plaintiffs summary judgment on the complaint in the amount of $500,000,
 
 *306
 
 plus interest, against Vista. The court dismissed plaintiffs’ claims against the other defendants since only Vista was a party to the documents upon which the complaint was based. The plaintiffs’ motion for leave to file a second amended complaint was also granted. The court denied the defendants’ cross motion and dismissed their affirmative defenses and counterclaim.
 

 The Appellate Division modified the Supreme Court order to deny plaintiffs’ motion for summary judgment and granted defendants’ cross motion for summary judgment dismissing the complaint and for leave to file an amended counterclaim. The Appellate Division stated that the City’s acceptance of money in exchange for an accelerated and favorable determination was an abuse of its governmental power and as such violated public policy, thereby rendering the agreement void and unenforceable.
 

 The Appellate Division granted plaintiffs’ motion for leave to appeal to this Court, and certified the following question: "Was the order of [the Appellate Division], which modified the order of the Supreme Court, properly made?”
 

 II
 

 We hold that the agreement entered into between the parties, whereby the plaintiff, in exchange for a predetermined sum of money, would provide to defendant an expedited and favorable determination as to the SRO status of a building defendant was seeking to purchase, is void as violative of public policy and is unenforceable
 
 (Szerdahelyi v Harris,
 
 67 NY2d 42, 48;
 
 McConnell v Commonwealth Pictures Corp.,
 
 7 NY2d 465, 469). Notably, the City was already aware of the prior determination that the property was not an SRO. The City is restricted from bargaining and agreeing to schemes or arrangements beyond public policy and procedures prescribed by the law, under the guise of "public good.”
 

 The City had a duty to render its determinations as to the status of the building expeditiously and based solely on a review of the relevant criteria. The law should not be applied more favorably to the highest bidder or based on whether or not a party is able to pay. In
 
 Seawall Assocs. v City of New York (Seawall II)
 
 (74 NY2d 92,
 
 cert denied sub nom. Wilkerson v Seawall Assocs.,
 
 493 US 976), this Court held unconstitutional, as a physical and regulatory taking, a statute containing a buy-out provision. Local Laws, 1987, No. 9 of the City of
 
 *307
 
 New York,
 
 [3]
 
 imposed a moratorium on the conversion, alteration and demolition of SRO buildings.
 
 [4]
 
 Owners could, however, make the payment of $45,000 per unit or the cost of a replacement unit, or by providing an equal number of replacement units, purchase an exemption. This Court determined the buy-out exemption of Local Law No. 9 rendered the law constitutionally unacceptable. The Court found that the law permitted owners to avoid the illegal confiscation by paying a "ransom” (74 NY2d, at 113,
 
 supra).
 

 Defendant’s counterclaim for damages caused by the delay in issuing the permits needed to construct the building is dismissed as there is no basis for defendant’s cause of action. The decision whether to issue a permit is a discretionary determination and the actions of the government in such instances are immune from lawsuits based on such decisions
 
 (see, Rottkamp v Young,
 
 15 NY2d 831,
 
 affg
 
 21 AD2d 373, 377;
 
 see also, Matter of Parkview Assocs. v City of New York,
 
 71 NY2d 274). Nor is Vista’s counterclaim viable when construed as an action for a breach of contract, as there was not a contract between Vista and the City.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by granting that branch of plaintiffs’ motion for summary judgment as sought dismissal of the counterclaim and by denying defendants’ cross motion for leave to file an amended counterclaim and, as so modified, affirmed. The Appellate Division’s certified question should be answered in the negative.
 

 
 *308
 
 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed. Certified question answered in the negative.
 

 [1]
 

 . Local Law No. 19, was enacted in 1983 and required the Department of Housing Preservation and Development to certify that there had been no harassment of SRO tenants within the previous three years. Without the certification, the Department of Buildings would not issue a demolition permit for an SRO.
 

 Local Law No. 19 and other SRO laws were designed to protect SRO tenants from being victimized by landlords cutting off all services or hiring persons to terrorize occupants into abandoning their homes. Once the buildings were emptied, the owners could demolish the SRO and erect a more profitable building on the site.
 

 [2]
 

 . The pertinent portion of the July 24, 1985 contract between 17 Vista Associates and Seamen’s Church provides: "Accordingly, and in consideration of the granting of the ground lease to the Property and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Associates agrees to pay to the Trust, the sum of $500,000 upon the earlier of (a) the date a duly issued permit or permits has or have been timely delivered to Associates permitting the lawful construction of the New Building, (b) the date Associates or Fee Associates shall have sold, exchanged or otherwise disposed of its interest in and to the Property, (c) the date (i) JMB/17 Vista Associates and/or K-17 Lease Co. and/or their respective affiliates, shall fail to be both legal and beneficial owner of an aggregate of fifty (50%) percent of the partnership interests in Associates, or (ii) JMB/17 Vista Associates and/or K-17 Fee Co. and/or their respective affiliates, shall fail to be both legal and beneficial owner of an aggregate of fifty (50%) percent of the partnership interests in Fee Associates, or (d) August 1, 1988 but only if Associates shall fail or refuse to promptly and diligently make application for and pursue all permits permitting the lawful construction of the New Building. Associates shall notify the City of any pending sale, exchange or other disposition of (x) its or Fee Associates’ interest in and to the Property and (y) any partnership interest in it or Fee Associates, which when consummated would cause the payment to be due under clause (b) or (c) of this paragraph.”
 

 [3]
 

 . Formerly codified as Administrative Code of City of New York § 27-198.2.
 

 [4]
 

 . Local Law No. 9 is the fourth in a series of SRO laws designed to assist SRO tenants. Local Law No. 59, enacted in 1985, established an 18-month moratorium, retroactive to January 1985, on the demolition of any SRO buildings. Local Law No. 59 expired on July 9,1986.
 

 Local Law No. 22 of 1986 extended the moratorium of Local Law No. 59 another six months and imposed a rent-up requirement which required landlords to keep all vacant units rented out and forbade warehousing vacancies in anticipation of emptying the building. Local Law No. 22 was declared unconstitutional in
 
 Seawall Assocs. v City of New York (Seawall I)
 
 (134 Mise 2d 187;
 
 Seawall Assocs. v City of New York [Seawall II]
 
 74 NY2d 92,
 
 cert denied sub nom. Wilkerson v Seawall Assocs.,
 
 493 US 976,
 
 supra).
 

 Local Law No. 9 of 1987 extended the moratorium of Local Laws No. 59 and No. 22 for five years, reenacted the rent-up requirement and contained hardship and buy-out provisions. This law was also declared unconstitutional in
 
 Seawall Assocs. v City of New York (Seawall II)
 
 (74 NY2d 92,
 
 cert denied sub nom. Wilkerson v Seawall Assocs.,
 
 493 US 976,
 
 supra).