85 N.Y.2d 663 (1995)
651 N.E.2d 886
628 N.Y.S.2d 18
Video Aid Corp. et al., Respondents,
v.
Town of Wallkill, Appellant.
Court of Appeals of the State of New York.
Argued March 29, 1995
Decided May 11, 1995.
Monte J. Rosenstein, Middletown, for appellant.
Burt J. Blustein, Middletown, for respondents.
Chief Judge KAYE and Judges SIMONS and SMITH concur with Judge CIPARICK; Judge BELLACOSA dissents and votes to affirm in a separate opinion in which Judges TITONE and LEVINE concur.
*664 CIPARICK, J.
Plaintiffs remitted $27,000 to defendant in satisfaction of sewer and water tap-in fees due in conjunction with their *665 application for a building permit to proceed with their planned renovation of new business premises in Wallkill. The fees, adopted by defendant in response to mandates imposed by the State and Federal governments to upgrade Wallkill's sewer and water systems, were subsequently declared unconstitutional and plaintiffs were awarded a judgment in the amount of the fees paid plus interest, costs and disbursements. On this appeal, defendant challenges plaintiffs' entitlement to the refund based on plaintiffs' failure to register any protest upon payment of the sewer and water tap-in fees.
On January 12, 1989, defendant adopted Resolution No. 1, imposing a $2,000 tap-in fee for each eight-fixture unit connected to the Town water system, and Resolution No. 2, establishing a $2,500 tap-in fee for each eight-fixture unit connected to the Wallkill sewer system. Each resolution directed that all fees were to be deposited into capital improvement funds respectively earmarked for the water and sewer systems.
Thus, after plaintiffs submitted their application for a building permit together with the $11,000 permit fee on December 11, 1991, they were advised by defendant that no permit would issue until the sewer and water tap-in fees were remitted in accordance with Resolutions Nos. 1 and 2. Following an inquiry to Wallkill's Building Inspector, plaintiffs determined to remit $27,000 for sewer and water tap-in fees to ensure there would be no delay in the issuance of the building permit and disruption of their proposed expansion plans. Plaintiffs were in the process of expanding their business operations by renovating vacant space adjacent to their present quarters. It is particularly significant that at the time plaintiffs remitted the tap-in fees only the architectural plans for the "build-out" of the additional space had been secured. No dates had yet been fixed by contract for the actual renovation to commence. Plaintiffs assert that it remains uncontroverted that the subject premises were fully connected to Wallkill's water and sewer systems, and all they sought was an extension of the lines into that portion of the interior they were renovating to install plumbing fixtures. Plaintiffs represent that this work did not require any effort or expense on defendant's behalf. Yet, without formal protest, plaintiffs remitted the $27,000 fee to defendant by check dated January 8, 1992. Plaintiffs now contend that this payment was coerced, alleging that no work *666 could progress on the premises absent payment of this arbitrary and unreasonable fee.
Plaintiffs instituted this action seeking a judgment declaring Resolutions Nos. 1 and 2 unconstitutional and a refund of moneys paid as an illegal tax under these resolutions. Supreme Court granted plaintiffs' motion for summary judgment, declaring the resolutions void as unconstitutional and awarding plaintiffs judgment for fees paid under Resolutions Nos. 1 and 2. Supreme Court further denied defendant's cross motion to dismiss the complaint. The Appellate Division affirmed, holding that Video Aid Corp. involuntarily paid the fees to avoid a threatened interference with the immediate possession of its property (see, Video Aid Corp. v Town of Wallkill, 203 AD2d 554). The Appellate Division was persuaded that this fact together with the prompt commencement of this action challenging the fees demonstrated the involuntariness of plaintiffs' payment, and that Wallkill would be unjustly enriched if permitted to retain the tap-in fees it improperly extracted from plaintiffs (see, id., at 557). We granted leave to appeal to defendant, and now reverse the order of the Appellate Division to the extent it directed a refund.[1] The issue presented here is whether plaintiffs have established that nonpayment of the tap-in fees would have interfered with their immediate possession of the property, supporting the claim that the $27,000 fee was paid under duress. We conclude that plaintiffs are not entitled to a refund. Nothing in this case compels departure from the established rule that the voluntary payment of a municipal fee that is subsequently nullified is not recoverable.
The settled law is that the payment of a tax or fee cannot be recovered subsequent to the invalidation of the taxing statute or rule, unless the taxpayer can demonstrate that the payment was involuntary (see, City of Rochester v Chiarella, 58 N.Y.2d 316, 323, cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester, 464 US 828; Mercury Mach. Importing Corp. v City of New York, 3 N.Y.2d 418, 424-425; Adrico Realty Corp. v City of New York, 250 N.Y. 29, 32; accord, City of Rochester v Chiarella, 65 N.Y.2d 92, 99, revg 100 AD2d 46). In reality, the payment of a tax or municipal fee is by nature involuntary. Whether a payment is considered involuntary in the context of an action for reimbursement of *667 taxes or fees paid to a governmental entity is a question of intention to be resolved upon consideration of the totality of the circumstances (see, City of Rochester v Chiarella, 58 NY2d, at 325, supra; People ex rel. Wessell, Nickel & Gross v Craig, 236 N.Y. 100, 105).
Payment under express protest is an indication that a tax is not paid voluntarily (see, Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 424, supra). Where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and must be prepared to meet that contingency (see, id., at 426). Otherwise, moneys remitted as taxes or fees are applied to authorized public expenditures, and financial provision is not made for refunds. In situations where payment of the tax or fee is made under actual duress or coercion, which is present when payment is necessary to avoid threatened interference with present liberty of person or immediate possession of property, the failure to formally protest will be excused. (See, Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 425, supra; Five Boro Elec. Contrs. Assn. v City of New York, 12 N.Y.2d 146, 149-150; Adrico Realty Corp. v City of New York, 250 NY, at 32, supra.)[2]
Determinative of the voluntary nature of plaintiffs' payment of the sewer and water tap-in fees is the absence of any evidence of actual duress and their failure to register any formal protest at the time of payment (cf., People ex rel. Wessell, Nickel & Gross v Craig, 236 NY, at 105, supra [pendency of certiorari proceeding "at least the equivalent of protest"]; Corporate Prop. Investors v Board of Assessors, 153 AD2d 656, 660, appeal dismissed in part, denied in part 75 N.Y.2d 802, affd sub nom. Matter of Bowery Sav. Bank v Board of Assessors, 80 N.Y.2d 961 [protest established by pendency of legal proceeding at time of payment in each year recovery sought]; but see, Conklin v Town of Southampton, 141 AD2d 596, 598 *668 [drastic financial and administrative implications prompted finding that commencement of action on behalf of potentially aggrieved real estate taxpayers did not constitute protest by each proposed class member]). As defendant acknowledged, had plaintiffs simply written "without prejudice" or "under protest" on the check they tendered as payment  which they concede they did not  the involuntary nature of the payment would have been established.
That plaintiffs anticipated disruption of their tight renovation schedule absent prompt payment of the tap-in fees is insufficient to constitute duress or coercion and excuse formal protest (see, Adrico Realty Corp. v City of New York, 250 NY, at 33, supra [taxpayer who remits payment to release property from an illegal hold or lien does so under duress]; Tripler v Mayor of City of N. Y., 125 N.Y. 617, 631; Goldberg v City of New York, 260 App Div 61, affd without opn 285 N.Y. 705). Even if we were to accept the dissent's proposition that such "interference" with the expansion of an existing business is equivalent to the duress suffered by licensees whose nonpayment of the fee would deprive them of their very livelihood (see, Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d, at 148-149, supra), the record in this case is devoid of any facts supporting plaintiffs' claim that they would suffer harm as a result of nonpayment of the tap-in fees.
Duress is present in situations where the taxpayer's only alternative is to submit to the illegal exaction or discontinue its business (see, Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d, at 149, supra; Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 425, supra; Boris Leasing Corp. v City of New York, 285 App Div 126, 129, affd for reasons stated below 309 N.Y. 682). The situation presented in Five Boro is illustrative.
For a four-year period, New York City exacted an exorbitant license fee from electricians, which fee was ultimately held unconstitutional as it bore no reasonable relationship to the costs of services involved in issuing the licenses (see, Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d, at 147, supra). Five Boro was the action in which several hundred electricians obtained a judgment to recover the excess payments. While it was undisputed that the license fees were not paid under protest, it was held that the payments were made under duress as a matter of law, thereby excusing protest (see, id., at 148). On appeal to this Court, it was determined that *669 "protest was not required in view of the compulsory nature of the payment * * * [the electricians] were not allowed to operate without licenses, nor could their licenses be renewed except by payment of excessive fees. * * * Undue interference with the conduct of business or occupation through an obstructive use of the licensing power has been held to constitute duress" (id., at 149-150). This contrasts sharply with the situation presented at bar.
Nothing is presented here to show that plaintiffs "were wholly or partly prevented from engaging in business unless the illegal exactions were paid" (id., at 150; see also, Tripler v Mayor of City of N. Y., 125 NY, at 631, supra). There is no evidence of any threat, real or perceived, that the operation of plaintiffs' business would be impaired if they mounted a challenge to the tap-in fees. Although Video Aid Corp.'s vice-president alleges that their expansion plans would have been jeopardized absent payment of the tap-in fees, there is no proof of this claim, and plaintiffs did not even lodge a complaint that the tap-in fees were onerous until they instituted this action one month after payment was remitted (see, Tripler v Mayor of City of N. Y., 125 NY, at 631, supra; Goldberg v City of New York, 260 App Div 61, supra). Thus, no authentic resistance is evident. To this end, plaintiffs cannot establish that their payment of the sewer and water tap-in fees was involuntary, nor can they demonstrate their situation constitutes an exception to avoid application of the settled rule that a voluntary payment of a tax or fee cannot be recovered.
This record contains no evidence to support the primarily factual determination by the Appellate Division, embraced by the dissent, that Video Aid Corp. would have been prevented from engaging in business absent payment of the tap-in fees or that the payment of such fees was made under duress simply because the payment was a precondition for the issuance of a building permit. Plaintiffs were in the process of planning the expansion of their existing business operations, rendering the conclusion reached by the Appellate Division and the dissent that plaintiffs remitted the fees involuntarily to avoid interference with their possession of the property pure speculation (cf., Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 N.Y. 558). The dissent argues that the Court's review of this matter is framed by "supportable findings and inferences," but Supreme Court made no findings of fact; indeed, it did not even address the question of duress in its opinion. Supreme Court reviewed only those facts *670 necessary to determine the legal question of whether the fees were unconstitutional, and having declared that they were, simply ordered a refund, without any consideration of any facts that might reveal either plaintiffs' voluntariness or duress. The Appellate Division's statements on the issue were entirely conclusory.
In sum, a simple payment "under protest" for the taxpayer preserves its challenge and for the municipality alerts it, at the time of receipt, to the uncertainty of those revenues. Short of that simple, unequivocal step  plainly important to governmental fiscal operations  a taxpayer may recover an illegal payment only where the taxpayer establishes that payment was made under duress, meaning more than business or economic inconvenience. Here, plaintiffs failed to make that showing. Plaintiffs were not prevented from possessing or using their property and showed no impairment to their business operations. All plaintiffs showed was that they could not proceed with an intended renovation as they had hoped.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the award of damages to plaintiffs against defendant vacated.
BELLACOSA, J. (dissenting).
Concededly and no longer at issue in this case, the $27,000 water sewer tap-in fee paid by Video Aid Corp. to the appellant Town to secure a building permit was unconstitutional, as declared by Supreme Court. The sole issue that divides this Court is whether the Appellate Division order directing the Town to make reimbursement is erroneous. We think it is not.
The Appellate Division applied this Court's calibrated, fact-specific analysis (see, City of Rochester v Chiarella, 58 N.Y.2d 316, 323-324), and concluded, in affirming Supreme Court, that the payment was made under legal duress (203 AD2d 554, 556-557). Thus, our review of this case is framed by supportable findings and inferences that justify the conclusion that Video Aid's $27,000 additional, special payment was unlawfully exacted by the Town. We respectfully dissent from this Court's reversal of a supportable and proper result, and we would affirm.
We first draw attention to the fact that in a variety of contexts, this Court has demonstrated an appropriate intolerance for allowing governmental entities to exact unwarranted payments from licensees or permittees, whether in exchange for favorable treatment (City of New York v 17 Vista Assocs., 84 N.Y.2d 299), *671 or in exchange for granting that to which the permittee was entitled absent the illegally charged fee (see, e.g., Five Boro Elec. Contrs. Assn. v City of New York, 12 N.Y.2d 146; Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 N.Y. 558). The most recent precedent, albeit in a different but relevant fact pattern, is City of New York v 17 Vista Assocs. (84 N.Y.2d 299, supra). We unanimously held void as against public policy an agreement entered into between the plaintiff New York City and the defendant builder in which, for a $1.5 million payment, the City would grant an accelerated and favorable determination as to the single-room occupancy multiple dwelling status of the affected building (id., at 306). The reasoning is instructive:
"The [municipality] had a duty to render its determinations * * * based solely on a review of the relevant criteria. The law should not be applied more favorably * * * based on whether or not a party is able to pay" (84 N.Y.2d 299, 306, supra).
This general principle  that municipalities cannot shirk or creatively manipulate their responsibilities to render independent determinations and that they must grant permits based on merit and not just for enhanced revenue generation  is equally applicable in the setting of the instant case. Notably, no one any longer quarrels that the fee in question is and was unconstitutional. The defendant Town's attorney, in his own affidavit supporting the Town's cross motion to dismiss Video's complaint, stated that the fee schedule was designed to "spread[] [t]he costs * * * necessitated * * * by the $12,000,000.00 sewer plant mandated by the DEC," and that "[t]he obvious costs of paying the outstanding bond on the $12,000,000.00 sewer plant * * * clearly required that some equitable [as the Town decided to spread it] system be imposed." The rationale of 17 Vista Assocs. and the other cases is cogent and instructive support for affirmance in this case. Moreover, no sufficient reason is advanced to countermand the Appellate Division's rationale and conclusion that Video Aid's water/sewer fee payment was made involuntarily and under legal duress.
The rules regarding the "voluntary versus involuntary/legal duress" determination are well established. In City of Rochester v Chiarella (58 N.Y.2d 316, supra), this Court reaffirmed and rearticulated the long-standing principles governing a citizen's right to a refund of tax, licensing or similar payments *672 that are unconstitutionally "exacted" by a governmental entity. Failure to register a formal, simultaneous protest when making the payment is excusable when a payment "is made under duress or coercion" (City of Rochester v Chiarella, supra, at 323). Illustrative duress rising to the level of involuntariness may be found in situations when a payment is made "to avoid threatened interference with present liberty of person or immediate possession of property" (City of Rochester v Chiarella, supra, at 323, citing Mercury Mach. Importing Corp. v City of New York, 3 N.Y.2d 418, 425; Five Boro Elec. Contrs. Assn. v City of New York, 12 N.Y.2d 146, 150, supra). In City of Rochester, the Court reflected the nuances in applying the test as follows:
"Recognizing that all governmental assessments are, in a sense, paid involuntarily, the determination is primarily one of degree, turning upon numerous factors, including * * * `the likelihood that authentic resistance will be asserted, the unavoidable drastic impact of the taxes or fees on the claimant, and the impact on the public fisc, if revenues raised long ago and expended are subject to reimbursement' (Paramount Film Distr. Corp. v State of New York, 30 N.Y.2d 415, 420, cert denied 414 US 829)" (City of Rochester v Chiarella, 58 N.Y.2d 316, 323-324, supra [emphasis added]).
Consistent with long-standing precedents, the Court engaged in a fact-specific analysis looking to the "totality of the circumstances surrounding [the] * * * payment" (id., at 325).
Contrary to the appellant Town's claim here, adopted by the majority, City of Rochester and this Court's related precedents do not compel a finding, as a matter of law and at this level of judicial review, that the water/sewer fee payment is nonreimbursable (see, City of Rochester v Chiarella, supra; Paramount Film Distrib. Corp. v State of New York, 30 N.Y.2d 415, 419-422, supra; Five Boro Elec. Contrs. Assn. v City of New York, 12 N.Y.2d 146, 149-150, supra; American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 N.Y. 565). In determining whether a particular payment is involuntary and, hence, reimbursable, this Court has prescribed inquiry into specific factors: (1) whether the fees were reasonable regulatory measures or revenue-raising devices (Paramount Film Distrib. Corp. v State of New York, 30 N.Y.2d 415, 420, supra); (2) whether the taxing governmental authority was enriched *673 by the payment (id., at 421-422); and (3) whether the governmental authority had already distributed the funds (id., at 422). Thus, for example, in Paramount, this Court examined all the circumstances and held that claimants could not recover motion picture licensing fees after the statutes authorizing the fees were nullified. The Court declared that (1) the payment was not involuntary or legally coerced, (2) the government was not unjustly enriched, (3) the fees merely defrayed the cost of the licensing program and did not produce revenue, and (4) the collected funds had been disbursed long ago.
The instant case, as resolved by the majority, stands in stark contrast to Paramount (30 N.Y.2d 415, supra), with each of the Paramount factors favoring reimbursement to Video Aid as a matter of fact and, therefore, surely not the opposite result as a matter of law. Here, the Town asserted that the resolution promulgating the fees at issue was designed expressly to raise the revenue to offset the $12 million bond it had issued to upgrade its Town-wide water and sewer facilities. Thus, it was not a mere fee for a licensing/regulatory program, as in Paramount. Additionally, here, Video Aid Corp. sued almost immediately after paying the fee in return for the issuance of the building permit. This reflected an "authentic resistance" as public, certain and cogent, if not more so, than payment with a "protest" notation placed on a check (City of Rochester v Chiarella, 58 N.Y.2d 316, 323-324, supra). To hold that simply writing "under protest" on the payment instrument constitutes "authentic resistance," but that plaintiff actually commencing suit almost immediately after payment fails (see, majority opn, at 667, 668, 669, 670) is perplexing, especially since the suit was successful. Given the promptness of the lawsuit in the instant case, concerns regarding the potential for imposing crushing burdens on a municipality to reimburse levies and fees wrongfully paid by citizens but already disbursed by the municipality are not real or cognizable. Thus, Paramount supports affirmance here.
Video Aid Corp.'s position is further buttressed by this Court's decision in Five Boro Elec. Contrs. Assn. v City of New York (12 N.Y.2d 146, supra) and some Appellate Division decisions affirmed by this Court (see, American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 N.Y. 565, supra; Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 N.Y. 558, supra). In Five Boro, electricians were held entitled to recover excess licensing fees exacted by *674 the municipality, although the exorbitant fees had been paid without immediate or simultaneous protest (12 N.Y.2d 146, 149, supra). Again, focusing on the particular facts of the case, this Court reasoned that failure to pay the fee would have resulted in precluding the claimants from earning a livelihood (id., at 149-150). The Court noted that "[u]ndue interference with the conduct of a business or occupation through an obstructive use of the licensing power ha[d] been held to constitute duress" (id., at 150, citing American Dist. Tel. Co. v City of New York, 213 App Div 578, affd without opn 243 N.Y. 565, supra). The Court likened this form of legal duress to the "business compulsion" rule, where recovery was permitted to persons or corporations "wholly or partly prevented from engaging in business unless the illegal exactions were paid" (Five Boro Elec. Contrs. Assn. v City of New York, supra, at 150 [emphasis added]). In concluding that "[n]othing is presented here to show that plaintiffs `were wholly or partly prevented from engaging in business' " (majority opn, at 669), the majority chooses to ignore (1) the evidence in the record that the permit would not issue unless the fee was paid; and (2) the practical reality that, without the permit, the vacant space could not be used for conducting Video's expanded business properly.
Notwithstanding the majority's pinched view of the record (see, majority opn, at 669), the Appellate Division had evidentiary support for its finding of involuntariness. A letter of transmittal from Liscum-McCormack-Vanvoorhis, an architectural firm located in Poughkeepsie, to Video's vice-president demonstrates that the architect had prepared a building permit application, along with complete plans for the expansion, and that the plans were submitted to the Town of Wallkill Building Inspector. The cover letter from the architect (1) gives notice to the Town that work could commence no later than the first week of January 1992; and (2) that the enclosed expansion plans had been sealed by the architect's office and an engineer. It further stated that all inquiries by the Building Inspector should be funnelled back to the architect. This constitutes ample direct and inferential evidence for the Appellate Division to find an existing, ongoing, and well-defined contractual relationship between Video Aid and the architectural/engineering personnel responsible for the expansion. Necessarily related thereto, legal commitments in the ordinary course of municipal business no doubt had to be included as predicates to even filing a formal permit application and *675 having it considered at all by the Building Inspector and Town. Towns are not in the business or habit of rendering advisory rulings, any more than courts are. Further, the affidavit of Video Aid's vice-president in support of Video Aid's motion for summary judgment explicitly states that (1) "plans and specifications [had been] prepared by the architect"; (2) "[a]rchitects were hired as well as engineers and designers to plan the build-out of the space"; (3) it was made "absolutely clear * * * that without the payment of the water and sewer hookup fees, no Building Permit would be issued"; (4) the expansion "needed to occur on a fairly tight timetable"; and (5) "the pressures of commitments made for this space made it necessary to move forward." The refusal to pay the water/sewer fee and consequent withholding of the permit translated into a bold and substantial interference with Video's ability to conduct "in part" its business in a manner otherwise lawfully permissible (Five Boro Elec. Contrs. Assn. v City of New York, 12 N.Y.2d 146, 150, supra).
While the majority asserts that Video Aid did not supply evidence of duress or harm that would be occasioned by nonpayment of the unconstitutional fee (majority opn, at 668, 669, 670), that claim is cogently contradicted by the record, as we have demonstrated. Video showed that it (1) was in the process of closing on the sale of the premises, (2) had stringent time constraints, (3) had contracted with architects and engineers to plan and supervise the expansion, (4) had submitted completed plans for approval to the Town, (5) had commitments for the space, and (6) needed the area to conduct its business properly. As in Buckley (30 App Div 463, affd 159 N.Y. 558, supra), every delay would have necessarily resulted in escalating pecuniary injury, both directly due to lost profits and, indirectly, based on architect and engineering fees and commitments attendant to the expansion.
The fact that Video Aid Corp. paid tribute for issuance of permits for an expansion of its business, as opposed to obtaining a license to open a business, does not diminish the coercive effect of the governmental action and the involuntary nature of this particular payment of an unconstitutional fee. Existing principles and precedents, in our view, support this conclusion. If they do not, they ought to.
Further, other well-established precedents also support our view that reimbursement of the illegal exaction is proper here. In American Dist. Tel. Co. v City of New York (213 App Div 578, supra), *676 affirmed by this Court without opinion (243 N.Y. 565), the holding was that a plaintiff, who entered a franchise agreement with the City under threat that, otherwise, plaintiff could not continue its business, could recover the fees paid for the franchise (213 App Div 578, 583-585, supra). Noting the circumstances  large sums of money required to be paid by plaintiff and the valuable property right at stake  the Court there determined that it was "not probable that this plaintiff voluntarily acquiesced in the demand of the city" (id., at 583).
In Buckley v Mayor of City of N. Y. (30 App Div 463, supra), also affirmed by this Court, without opinion (159 N.Y. 558), the holding was that recovery of fees was warranted where the property owner, engaged in building an apartment house, was threatened that his workers would be arrested unless a building permit fee was paid (30 App Div 463, 464-465, supra). The reasoning is instructive:
"The defendant's threats were certainly threats of actionable acts whereby [plaintiff's] estate would be lessened. Every day that was thus lost to him was a serious pecuniary injury. * * * It was the threatened exercise of power which [plaintiff] believed they possessed that was likely to take money out of his pocket every day that it continued. Interest on his capital would be running, and increment from rents would be postponed" (id., at 466).
The Court focused not only on the threat to arrest (which the Town claims is critical), however, but also on the loss to be visited on the plaintiff (which the Town and majority largely ignore). The Court concluded that, notwithstanding the equitable and legal remedies available to the plaintiff there, the time it would have taken to pursue such actions to fruition "might have * * * ruined [plaintiff] before even partial redress could [have been] afforded him" (30 App Div 463, 467, supra).
In the instant case, the Town's failure to grant Video Aid the building permit held hostage the licensee's business expansion into the vacant space and rendered it an unattainable goal, unless an unconstitutional water/sewer tap-in fee was paid. Thus, at least, it "partly prevented [Video] from engaging in business" (see, Five Boro, supra, at 150). Notwithstanding the $11,000 already paid by Video Aid for the building *677 permit  which payment entitled it to the permit  the Town forced Video to pay an additional $27,000 to do what Video should already have been entitled to do. Given the large sum exacted and the valuable right at stake, namely, expanding its business and conducting that business properly, it is "not probable" Video "voluntarily" made the payment (see, American Dist. Tel. Co. v City of New York, 213 App Div 578, 583, affd without opn 243 N.Y. 565, supra). Indeed, based on a reasonable application of the rubrics we have articulated, the Appellate Division rightly concluded that the payment was legally coerced under the circumstances of this case.
The concededly unconstitutional fee, an undisguised revenue-raising measure, exacted as a precondition to granting an otherwise authorized and already qualified and paid-for building permit, should result in the only appropriate and proportionate remedy: reimbursement to Video of the unconstitutional fee. Under the circumstances of this case, we disapprove allowing the Town (1) to "appl[y] [the law] more favorably * * * based on whether or not [Video] [was] able to pay" (City of New York v 17 Vista Assocs., 84 N.Y.2d 299, 306, supra); (2) to permit itself to become unjustly enriched at Video Aid's expense (see, Paramount Film Distrib. Corp. v State of New York, 30 N.Y.2d 415, 421-422, supra); and (3) to allow the declaration of now-conceded unconstitutionality of the fee to be rendered a Pyrrhic victory for the payor.
In our view, most respectfully, application of all the relevant factors and legal principles warrants affirming the Appellate Division's order requiring the Town of Wallkill to reimburse Video Aid Corp. for the $27,000 unconstitutional fee it paid for issuance of the permit.
Order, insofar as appealed from, reversed, etc.
NOTES
[1] We note that, on this appeal, defendant does not challenge that part of the Appellate Division order which held the resolutions unconstitutional.
[2] We do not agree with the dissent's interpretation of the holding in City of New York v 17 Vista Assocs. (84 N.Y.2d 299). That case involved an illegal agreement between the City of New York and a developer that arranged to pay the City a sum of money in exchange for expedited and favorable classification of a building defendant sought to purchase, notwithstanding the City's prior unfavorable determination on the building's classification. It is in this context that we stated that "[t]he law should not be applied more favorably * * * based on whether or not a party is able to pay" (City of New York v 17 Vista Assocs., 84 NY2d, at 306, supra), a circumstance not evident at bar.