104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
17 VISTA ASSOCIATES, K-17 Lease Company, Robert Kaufman and
Melvin Kaufman, Plaintiffs-Appellants,
v.
THE CITY OF NEW YORK, Anthony Gliedman, and Deborah Wright,
Commissioner of the City of New York Department of Housing
Preservation and Development, and Matt Shavit, Acting
General Counsel of the City of New York Department of
Housing Preservation and Development, as trustees of 15
State Street Housing Trust, Defendant-Appellee.
 No. 96-7577.
 United States Court of Appeals, Second Circuit.
 Dec. 19, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Denise L. Cote, Judge).
 APPEARING FOR APPELLANTS: Philip Allen Lacovara, Mayer, Brown & Platt, New York, N.Y.
 APPEARING FOR APPELLEES: Elizabeth Dvorkin, Office of the N.Y. City Corporation Counsel, New York, N.Y.
 S.D.N.Y.
 AFFIRMED.
 Present: NEWMAN, Chief Judge, WINTER and WALKER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the District Court is hereby AFFIRMED.
 
 
 3
 17 Vista Associates, K-17 Lease Company, and Robert and Melvyn Kaufman (collectively, "Vista") appeal from the April 24, 1996, order of the District Court dismissing their complaint with prejudice and denying their motion for leave to file an amended complaint. The defendants, the City of New York and various present and former City officials (collectively, "the City"), had asserted that Vista's complaint was barred by res judicata. Vista argues that, under New York law, neither its defense nor counterclaim asserted in the prior suit bar the present complaint because (i) a defense raised in a prior suit generally does not bar the defendant from raising the same facts as a claim in a later suit, and (ii) the counterclaim and the present complaint are based on different factual groupings.
 
 
 4
 In early 1985, Vista was negotiating with Seamen's Church Institute of New York ("Seamen's") to purchase a building located at 15 State Street in Manhattan. Seamen's had been using the building as temporary housing for seamen between voyages. Vista planned to purchase the building, demolish it, and erect an office building.
 
 
 5
 During the negotiations, an issue arose as to whether the building was subject to New York City's Single Room Occupancy ("SRO") laws. Imposed to protect the occupants of SRO's from becoming homeless, the pertinent provision of the SRO laws imposed an eighteen-month moratorium on the demolition or alteration of single room occupancy buildings. Thus, no demolition of 15 State Street would be permissible unless the City determined that the building was not an SRO.
 
 
 6
 After negotiating with Vista and Seamen's from April to July of 1985, the Commissioner of the Department of Housing Preservation and Development eventually suggested to Vista and Seamen's that if they agreed to set up a "housing trust" for low income tenants, the City would promptly issue a determination that the building was not an SRO. To fund this housing trust, Seaman's was to turn over to the City $1 million of the sale proceeds, and Vista was to execute a promissory note in the amount of $500,000.
 
 
 7
 Due to the potential losses that would be incurred if the sale and demolition were not completed, both Vista and Seamen's acceded to the City's demands. Vista's promise to pay was conditioned on the City's determination that the building was not an SRO, and on the processing of other necessary permits and applications.
 
 
 8
 According to Vista, the City nevertheless insisted on unnecessary reviews, studies, and permit applications, thereby creating unreasonable delays in the issuance of the demolition and construction permits. As a result, Vista's new office building was not constructed and ready for occupancy until 1988. By this time, Vista's costs had risen, and because of the stock market crash of 1987, Vista was unable to lease all of the new office space. In 1990, Vista lost the building to its mortgagee.
 
 
 9
 Early in that year, the City and the trustees of the "housing trust" sued Vista in New York State Supreme Court to collect on the promissory note. Although the City had issued all of the building permits by that time, Vista had refused to pay the note as it became due.
 
 
 10
 In its answer, Vista asserted various defenses, including the defense that the note was procured by duress. Vista also asserted a counterclaim alleging that it was the City, and not Vista, that had breached the agreement by failing to issue the permits in a timely fashion. In its counterclaim, Vista sought damages of $70 million for the costs incurred as a result of the City's delays in issuing the permits.
 
 
 11
 In December 1990, just as Vista was scheduled to file its reply papers on a cross-motion for summary judgment, a Vista representative secured a copy of Vista's original application for the building permit, filed with the City. On that application an unidentified City official had made a notation which read "No SRO, no landmark, no special dist[rict]." The notation was dated prior to the time that the City had been negotiating with Vista for the promissory note.
 
 
 12
 It therefore appeared to Vista that the City had known all along that the building was not an SRO. Vista concluded that the City improperly induced it to sign the promissory note in exchange for an agreement not to make a determination that the City knew it would not, and could not, have made.
 
 
 13
 Vista presented this new evidence to support its duress defense. In the final stage of the state court litigation, the New York Court of Appeals, affirmed the finding of the Appellate Division, holding that the promissory note agreement violated public policy, and that the promissory note was therefore unenforceable. At the same time, the Court of Appeals affirmed the trial court's dismissal of Vista's counterclaim, reasoning that there was no contract and thus no breach, and that the City had no duty to issue any permits. City of New York v. 17 Vista Associates, 618 N.Y.S.2d 249, 305 (1994).
 
 
 14
 Several months after the Court of Appeals issued its opinion, Vista commenced the present action seeking damages against the City for fraud and violations of state and federal constitutional law. The complaint focused on the existence of the "No SRO, no landmark, no special dist." notation and alleged that the City fraudulently induced Vista to sign the promissory note. It demanded $70 million in damages, plus punitive damages, and attorneys fees for the defense of the prior suit and the pursuit of the present one.
 
 
 15
 The doctrine of res judicata bars any future action between the parties that is based on the "same cause of action" as a prior action. Reilly v. Reid, 407 N.Y.S.2d 645, 647 (1978). To determine what is the "same cause of action," New York courts use a "transactional" or "factual groupings" approach, which requires a pragmatic evaluation of the transaction (or transactions) underlying the two claims. Lukowsky v. Shalit, 487 N.Y.S.2d 781, 784 (App.Div.1985).
 
 
 16
 A single cause of action may encompass "one of several separately stated claims ... based on the same congeries of facts but related to two different legal theories of recovery," Reilly at 648, or two different types of legal relief, id. Thus, variations of facts alleged, types of relief, or legal theories of recovery do not alter the fact that two claims based on the "same gravamen of the wrong" connote a single cause of action for purposes of res judicata. Id.; see O'Brien v. City of Syracuse, 445 N.Y.S.2d 687 (1981). If the elements of proof and evidence necessary for two claims vary substantially, then two distinct causes of action may lie, Lukowsky at 784, provided the two claims do not merely present different legal theories to recover what is essentially the same relief, O'Brien at 689.
 
 
 17
 The decisive issue in this case is whether Vista's counterclaim in the state court litigation is res judicata as to the present complaint.[1] We conclude that Vista's new fraud theory cannot transform what is essentially a single wrong into two distinct causes of action for purposes of res judicata. The counterclaim sought $70 million in damages for the City's delay in issuing the building permits. Vista now seeks the same $70 million on the theory that the City's fraudulent inducement of the promissory note resulted in the same delay.
 
 
 18
 In the present claim as in the previous counterclaim, the most important aspect of Vista's charge against the City--the "gravamen of the wrong," Reilly at 648--is the damage caused by the City's delay in issuing permits for the demolition and construction on the State Street site. Aside from Vista's new focus on the "NO SRO" notation (to establish the elements of the fraud theory), the salient facts supporting the new fraud claim and the dismissed counterclaim are essentially the same.
 
 
 19
 Vista attempts to avoid this result by contending that it could not pursue the fraud claim during the state court litigation because it discovered the "No SRO" document too late in the proceedings to be able to assert a fraud counterclaim. Apparently conceding that after discovering the document, it could have sought leave to amend its answer, Vista states that it did not seek such leave because, in its opinion, the trial court would have denied the motion. Whatever merit there might be in Vista's prediction as to the probable outcome of an eleventh-hour motion for leave to amend, Vista offers no persuasive argument to support its contention that this is a valid reason for its failure even to file the motion. Moreover, any wrongful denial of leave to amend was subject to correction on appeal.
 
 
 
 [1]
 We agree with Vista that its state court duress defense raises no bar to the present complaint. See, e.g. Classic Automobiles, Inc. v. Oxford Resources, Corp., 612 N.Y.S.2d 32 (App.Div.1994); Batavia Kill Watershed District v. Charles O. Desch, Inc. 444 N.Y.S.2d 958, 100 (App.Div.1981)